## TAFT REALTY CORPORATION *v.* YORKHAVEN ENTERPRISES, INC., ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued March 3—decided April 15, 1959

*Leo E. Sherman,* with whom were *Joseph J. Mager* and, on the brief, *Robert C. Zampano,* for the appellant (plaintiff).

*Samuel A. Persky,* with whom was *Bertrand B. Salzman,* for the appellees (defendants).

BALDWIN, J. The plaintiff, referred to herein as Taft Realty, is a Connecticut corporation which was created in 1936 pursuant to a plan for reorganization under § 77B of the Bankruptcy Act (48 Stat. 912, as amended, 11 U.S.C. §§ 501-676) in a cause entitled "In the Matter of The Taft Realty Company, Debtor," pending in the United States District Court for Connecticut. The duration of the corporation was unlimited, and it was empowered "to lease (either as lessor or lessee) . . . theatres . . . ." Among other properties, it owned the Shubert Theatre in New Haven, which could be used

only for theatrical productions and other forms of entertainment. Pursuant to the reorganization plan, all the stock of Taft Realty, with the exception of five qualifying shares, was issued to trustees under a voting trust agreement. The five qualifying shares were issued, one each, to five individuals. The voting trust agreement expired on September 1, 1951. The voting trustees were designated in the agreement. They comprised three of the five members of the board of directors elected in 1937.

On July 29, 1941, the board authorized the leasing of the Shubert Theatre to the named defendant, hereinafter referred to as Yorkhaven, for a term of twelve years beginning September 1, 1941, and ending August 31, 1953. The annual rental was fixed at $15,000 for the first two years and $21,000 for the rest of the term. On August 15, 1941, the board authorized the execution of an agreement which modified the original lease by fixing the annual rental at $10,000 plus a sum, not to exceed $11,000, equal to 4 per cent of the receipts in excess of $250,000 per annum derived by Yorkhaven by way of "box office receipts," excluding admission taxes, and by way of amounts for rent of the theater to others. Thus the total rent would not exceed $21,000 in any one year. The agreement expressed the consideration therefor as follows: "[I]n consideration of the mutual covenants herein contained, and in consideration of One Dollar ($1.00) and other valuable considerations, the receipt whereof are hereby acknowledged . . . ." On February 16, 1942, the board authorized an extension of the lease from August 31, 1953, to August 31, 1962. This extension agreement stated that it was "in consideration of the mutual covenants herein contained." The lease, modified as to rent and length of term, gave York-

haven the right to assign the lease or sublet the leased premises, subject, however, to the continuance of Yorkhaven's obligation for the performance of the terms of the lease. Yorkhaven sublet the premises to the Shuberthaven Operating Company, hereinafter referred to as Shuberthaven.

The plaintiff claims that the voting trustees, acting as directors, did not have the power to make a lease for a term extending beyond the termination of their term of office as trustees, which expired on September 1, 1951. The voting trust agreement gave them the right and power to vote and act, to elect and remove directors, and to consent to any lawful act of Taft Realty, as though they were the absolute owners of the stock. The powers and duties of voting trustees are fixed by the voting trust agreement. 5 Fletcher, Corporations (Perm. Ed.) § 2091.1; note, 159 A.L.R. 1067; 2 Scott, Trusts (2d Ed.) § 186; see Rev. 1958, § 33-57; Leavitt, The Voting Trust, p. 50. The obvious intent of the agreement was to confer upon the voting trustees the complete status of stockholders. 2 Scott, op. cit., § 193. As stockholders, they could elect directors and include themselves as such. As directors, they had charge of the corporate property. *Greenberg* v. *Harrison,* 143 Conn. 519, 523, 124 A.2d 216; *Krall* v. *Krall,* 141 Conn. 325, 334, 106 A.2d 165. They could lease it upon such terms as they in good faith and the exercise of an honest judgment considered would serve the best interests of the corporation. 2 Fletcher, op. cit., pp. 551-554. They were not trustees in the ordinary sense of that term, although even a testamentary trustee may, if necessary for the accomplishment of the trust purpose or to preserve the trust property, make a lease extending beyond the termination of the trust. *Russell* v. *Russell,* 109

Conn. 187, 204, 145 A. 648. The claim that as a matter of law the voting trustees could not make a lease beyond their term as voting trustees is without merit.

The plaintiff claims that the agreements as to change of rental and the extension of the lease are invalid for lack of consideration. It assumes that because the agreement modifying the terms concerning rent appears to call for less rent than the original lease, there is no consideration for either that agreement or the agreement to extend the term. Both of these agreements recite the consideration of the mutual covenants contained in them, and the agreement as to change of rental also acknowledges the receipt of $1 and other valuable consideration. Parties to an existing contract may, by a subsequent contract, alter any term of their original one. *O'Loughlin* v. *Poli,* 82 Conn. 427, 432, 74 A. 763; *Bristol & Plainville Tramway Co.* v. *Eveline,* 89 Conn. 382, 393, 94 A. 290. The rent provided in a written lease may even be changed by a subsequent parol agreement. *Baier* v. *Smith,* 120 Conn. 568, 571, 181 A. 618. Mutual promises are sufficient consideration for a binding contract. *Finlay* v. *Swirsky,* 103 Conn. 624, 631, 131 A. 420; 1 Corbin, Contracts § 142. Furthermore, the recital of consideration acknowledged as received is prima facie evidence of the fact recited. *Raymond* v. *Sellick,* 10 Conn. 480, 484; *Finegan* v. *Prudential Ins. Co.,* 300 Mass. 147, 153, 14 N.E.2d 172; 1 Williston, Contracts (Rev. Ed.) § 115B, p. 403. The plaintiff, having alleged that it received no consideration for entering into these agreements, had the burden of proof on the matter. *Johnson County Savings Bank* v. *Walker,* 79 Conn. 348, 352, 65 A. 132; *Citizens Assn.* v. *Bridgeport,* 84 Conn. 383, 387, 80 A. 203. The trial court found that

the plaintiff had failed to sustain this burden. The plaintiff takes nothing by this claim of error.

The plaintiff claims further that the "box office receipts" which enter into the computation of the additional rent include the sums received from program advertising, sale of sheet music, checkroom facilities, sale of candy and soft drinks, and also the value of complimentary tickets issued to the press and to others. There is nothing to suggest that the parties themselves intended to give any technical or special meaning to "box office receipts," and under these circumstances the term must be given its ordinary meaning. *Dorne* v. *Williams,* 140 Conn. 193, 199, 98 A.2d 796. Webster, New International Dictionary (2d Ed.), defines "box office" as "[i]n a theater . . . the office where tickets of admission are sold." Manifestly, box office receipts would be the money received from the sale of tickets of admission. The trial court has found, and it is not questioned, that Yorkhaven had not for a period of fourteen years included, in its accounting for rentals due Taft Realty, any income from the additional sources now claimed by the plaintiff. The meaning of the terms of a contract as shown by the conduct of the parties regarding them is a proper consideration in the interpretation of the contract. *Krall Coal Co.* v. *Century Indemnity Co.,* 139 Conn. 634, 640, 96 A.2d 311; *Leventhal* v. *Stratford,* 121 Conn. 290, 297, 184 A. 587; 12 Am. Jur. 787, § 249. The trial court did not err in holding that "box office receipts" did not include receipts from the additional sources claimed by the plaintiff.

The court found against the plaintiff on the claim in its complaint that Yorkhaven and Shuberthaven had failed to maintain the theater in a proper state of repair and thus had violated one of the covenants

of the lease. The plaintiff seeks extensive corrections in the finding on these matters but none can be made. The testimony was conflicting. At the request of the parties, the trial court viewed the entire theater. The issue posed questions of fact within the province of the trier to decide. *Humphrey* v. *Argraves,* 145 Conn. 350, 355, 143 A.2d 432. There is no error in this feature of the case.

The court was in error in permitting the use of reports by the fire marshal in the cross-examination of the plaintiff's expert witness on the matter of the condition of the theater. The witness, however, disagreed in substantial respects with the statements in the reports shown to him on cross-examination. These statements were purportedly used to affect his credibility. If he denied them, they could have no probative value whatsoever. *Branford Trust Co.* v. *Prudential Ins. Co.,* 102 Conn. 481, 485, 129 A. 379; *Shailer* v. *Bullock,* 78 Conn. 65, 70, 61 A. 65. The plaintiff has failed to show that the error was harmful. There was no error in the other rulings on evidence and they require no discussion.

There is no error.

In this opinion the other judges concurred.