## THOMAS GORDON *v.* INDUSCO MANAGEMENT CORPORATION

HOUSE, C. J., SHAPIRO, LOISELLE, MacDONALD and BOGDANSKI, Js.

Argued November 8, 1972—decided January 24, 1973

*Frank W. Murphy,* with whom, on the brief, were *Abraham D. Slavitt* and *Robert A. Slavitt,* for the appellant (defendant).

*Jules Lang,* with whom, on the brief, were *George J. Lepofsky* and *Melvin J. Silverman,* for the appellee (plaintiff).

LOISELLE, J. The plaintiff brought an action to recover damages for breach of contract and the court rendered judgment for the plaintiff and awarded damages. The defendant has appealed from this judgment.

The facts found by the court, necessary to dispose of the claims of the parties, can be summarized as follows: The plaintiff had acquired an area distributorship franchise in a fast-food operation called Heap Big Beef with the exclusive right to sublicense, establish and control all "Heap Big

Beef" restaurants in Fairfield County. Such outlets were to be established within certain time limitations. On March 13, 1968, the plaintiff entered into a contract with the defendant for the erection and leasing of a building in the Danbury shopping center. The plaintiff required this building to establish a first outlet as a showcase or pilot operation from which to open further outlets. In addition, the opening of an outlet would assist the plaintiff to obtain the financial backing he needed to build additional units and to attract potential licensees for such units. On the execution of the lease the plaintiff gave the defendant a deposit of $10,000. The contract called for a building costing $40,000, to be completed within ninety days after the submission of construction bids by contractors obtained by the defendant. A successful bid for the construction of the proposed building was approved by the parties on June 5, 1968, after the plaintiff agreed to pay additional costs over the $40,000 previously agreed on. The defendant never constructed the building. Further facts found by the court will be referred to in the discussion of the various claims raised by the parties.

The defendant assigns error in the finding and attacks the court's failure to find material facts as set forth in twenty-one paragraphs of the draft finding. To secure an addition on this ground the defendant must refer in its brief to some part of the appendix, the pleadings or an exhibit properly before us which discloses that the plaintiffs admitted the truth of the fact or that its validity was conceded to be undisputed. *Walsh* v. *Turlick,* 164 Conn. 75, 77, 316 A.2d 759; *Stoner* v. *Stoner,* 163 Conn. 345, 347, 307 A.2d 146.

Only one of these requested additions merits discussion.[1] The defendant seeks to include in the finding the fact that the plaintiff intended to hire another person to manage his outlet at the Danbury location. This paragraph was not included by the court in its finding but is admitted by the plaintiff, as is shown by the defendant's appendix. This fact is material to the issue of damages and will be added to the finding.

The defendant further asserts in its assignment of errors that the court erred in finding eight paragraphs of the finding without evidence. These claims have not been briefed and accordingly are considered abandoned. *Stoner* v. *Stoner,* supra; *Martin* v. *Kavanewsky,* 157 Conn. 514, 516, 255 A.2d 619.

The defendant claims that it returned the plaintiff's deposit of $10,000 and that acceptance by the plaintiff of this return before the complaint was amended operated as a rescission of the contract and lease agreement. The complaint was amended sixteen days after it was filed by deleting a prayer for rescission. The finding is silent as to whether the deposit was returned although the appendix does refer to the return of the deposit at some unstated time. In any event the court's unattacked finding states that "[t]he defendant offered to return the plaintiff's lease deposit a number of times prior to the institution of suit, but the plaintiff refused, advising the defendant that he had a great

---

[1] Eleven of the requested additions are nowhere shown to be admitted or undisputed. Of the remaining requested additions five are implicit in the finding. The finding need not be in language identical with the draft finding. *Walsh* v. *Turlick,* 164 Conn. 75, 77, 316 A.2d 759. The remaining claims are abandoned or are immaterial to our disposition of the appeal.

deal invested in the venture and wanted performance of the provisions of the lease." A definite election to rescind a contract is final and operates as a waiver of any claim for damages for any breach of the contract. A rescission is effective when, in addition to a restoration of a status quo, an intention on the part of both parties that the contract be rescinded exists. *Stern & Co.* v. *International Harvester Co.,* 148 Conn. 527, 532, 172 A.2d 614; *Haaser* v. *A. C. Lehmann Co.,* 130 Conn. 219, 221, 33 A.2d 135; *O'Keefe* v. *St. Francis Church,* 59 Conn. 551, 561, 22 A. 325. Such intention is a matter of fact for the trier, whether court or jury, to ascertain. *Stern & Co.* v. *International Harvester Co.,* supra; *Finlay* v. *Swirsky,* 98 Conn. 666, 671, 120 A. 561; *Woodbridge Ice Co.* v. *Semon Ice Cream Corporation,* 81 Conn. 479, 484, 71 A. 577; *Glen Alden Corporation* v. *Duvall,* 240 Md. 405, 215 A.2d 155; 1 Black, Rescission and Cancellation (2d Ed.) § 6; 17 Am. Jur. 2d, Contracts, § 482. It is clear from the findings of the court that the plaintiff at no time before the action was brought intended to cancel or rescind the contract. Relying strongly on the fact that the complaint, before amendment, prayed for a rescission, the defendant claims that his tender of the $10,000 deposit and acceptance of this tender by the plaintiff constituted an effective rescission of the contract. In the action before us the plaintiff included in the complaint additional counts seeking substantial damages for the alleged breach of the contract. This court has noted that prompt institution of the suit was relevant evidence that the plaintiff did not mean to abandon his rights under the contract. The reasoning of the court in *Haaser* v. *A. C. Lehmann Co.,* supra, 222, is applicable: "If the plaintiffs could prove the allegations of their

complaint, they had a perfect claim for damages and it is highly improbable that they would have intentionally and unnecessarily destroyed this claim." See also 12 Williston, Contracts (3d Ed. Jaeger), p. 212, § 1469. The court was not in error in refusing to find a rescission of the contract.

In an assignment of error the defendant argues that the contract between the parties executed on March 13, 1968, was modified on June 5, 1968, and that the ninety-day time period in which the premises were to have been constructed was waived by the modification. The defendant asserts that the modification afforded him a reasonable time to construct the proposed building. "Parties to an existing contract may, by a subsequent contract, alter any term of their original one. *O'Loughlin* v. *Poli*, 82 Conn. 427, 432, 74 A. 763; *Bristol & Plainville Tramway Co.* v. *Eveline*, 89 Conn. 382, 393, 94 A. 290." *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.*, 146 Conn. 338, 342, 150 A.2d 597; 17 Am. Jur. 2d, Contracts, § 465.

Paragraph 40 of the original agreement between the parties provided that a structure would be completed by the defendant within ninety days after the submission of construction bids by contractors and obligated the defendant to pay up to the amount of $40,000 for the cost of construction. On June 5, 1968, the agreement was modified to the extent that the parties agreed that the cost of the building was to be $45,000. The plaintiff, the defendant, and David Katz & Sons, whose relationship to the defendant is not revealed by the finding, exchanged promises and agreed that the plaintiff would pay one-half of the excess cost of construction over $40,000 and David Katz & Sons would pay the remaining half. The mutual promises were sufficient

consideration to bind the parties to the modification. *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* supra; *Finlay* v. *Swirsky,* 103 Conn. 624, 631, 131 A. 420.

The defendant's claim is that on June 5, 1968, there remained only seven days to complete the building under the time period provided in the original contract and consequently since a building could not be erected within seven days it was implicit in the modification of the contract that the parties agreed to waive the ninety-day term. The original contract did not, as the defendant claims, require that a structure be built ninety days after the signing of the contract, but rather provided for completion of the structure within ninety days after the submission of bids by contractors. The finding is silent regarding when bids were submitted but it is clear that at least one bid was submitted on or before June 5, 1968, and a ninety-day period commencing June 5, 1968, would have expired prior to September 9, 1968, the date of the writ. The unattacked findings indicate that once the bid was approved on June 5, 1968, it was anticipated that the building would be completed within ninety days. The plaintiff at all times expressed a sense of urgency to the defendants and communicated the importance the plaintiff attached to adhering to the time schedule agreed on for the erection of the building. The original contractual time requirements for construction were not waived and the claim of waiver cannot be sustained.

In its brief the defendant argues that since a delay occurred in obtaining a building permit from the Danbury planning commission, it became impossible to complete a building within the stipulated time period and as a result the contract became

voidable. The defendant further claims that on the return of the deposit at the time of the institution of the present action seeking a rescission the agreement was rendered "void." The short answer to this argument is that, as previously stated, no rescission was found by the trial court. The defendant's argument that the action of the Danbury planning commission prevented performance of the contract within the stated time period is not persuasive in light of the unattacked findings of the court which reveal that the shopping center's location is zoned for the use contemplated in the lease, and, prior to agreement on the lease, the plaintiff was assured by the defendant that there were no obstacles standing in the way of a prompt erection of the proposed building and the lease finally agreed to by the parties contained no provision "for such a contingency." Furthermore, the plaintiff made known to the defendant the utmost importance which the plaintiff attached to having the building open for business during the summer months. Under such circumstances, the doctrines of frustration of purpose and impossibility of performance found in such cases as *School District* v. *Dauchy,* 25 Conn. 530, *Straus* v. *Kazemekas,* 100 Conn. 581, 590, 124 A. 234, and the modern approach to these doctrines expressed in *Hess* v. *Dumouchel Paper Co.,* 154 Conn. 343, 351, 225 A.2d 797, need not be discussed as it is unquestioned that performance was promised by the defendant with full realization of the applicable zoning requirements. 6 Corbin, Contracts § 1328; 17 Am. Jur., Contracts, § 406; Restatement, 2 Contracts § 457 (b), with a reference to § 456 (c).

The court was not in error in concluding that the defendant breached its contract and lease agreement with the plaintiff.

The defendant attempted to offer in evidence a deposition of the treasurer of the franchisor. The court excluded the deposition and the defendant has assigned this ruling as error.

The plaintiff argues that since the document was not marked as an exhibit for identification it was consequently not preserved and, therefore, the trial court's exclusion of the deposition may not be reviewed by this court. "The purpose of marking, as an exhibit for identification, a document which has been excluded as a full exhibit is to preserve it as a part of the record on appeal so that this court can examine it to determine whether the trial court made a proper ruling." *Drazen Lumber Co.* v. *Casner,* 156 Conn. 401, 405, 242 A.2d 754. Since the defendant failed to request the trial court to mark the deposition as an exhibit for identification, the treasurer's deposition is not contained in the record. In a similar factual situation this court, however, reviewed a trial court's action in receiving a deposition where the record contained facts concerning the deposition and the manner in which it was taken. *Goodchild & Partners, Ltd.* v. *Ready Tool Co.,* 100 Conn. 378, 380, 124 A. 38. The record in this case, as in the *Goodchild* case, is sufficient to present the claims on which the trial court acted and to allow this court to review the ruling.

Technically, a deposition is the written testimony of a witness given in the course of a judicial proceeding. A deposition may be taken in advance of the trial or hearing, or during the course of the proceeding, on oral examination or in response to written interrogatories with an opportunity for cross-examination. 23 Am. Jur. 2d, Depositions and Discovery, § 1; *Gracie Square Realty Corporation* v. *Choice Realty Corporation,* 305 N.Y. 271, 113

N.E.2d 416. It is not an exhibit, but testimony in the custody of the clerk of the court until offered in evidence. General Statutes § 52-151.

It is stated in the record that at the time the deposition was taken, the treasurer of the franchisor referred during the direct examination to some paper or document. The record indicates that prior to the deposition the witness had requested the defendant's counsel to submit in advance written questions which the defendant intended to ask. Thereafter, written questions were submitted to him and the witness made notations based on his file and his own recollection on that question sheet prior to the hearing. The witness referred to this document to refresh his recollection at the deposition hearing and the plaintiff's counsel requested to see the paper. The witness and his attorney, who was also present, refused to allow the plaintiff's counsel to inspect the document. When the deposition was offered at the time of trial the plaintiff objected to its admission and the court excluded the deposition on the ground that the plaintiff's counsel had been deprived of an opportunity for full cross-examination.

The right of cross-examination is not a privilege but is an absolute right and if one is deprived of a complete cross-examination he has a right to have the direct testimony stricken. 58 Am. Jur., Witnesses, §§ 611, 612. It is only after the right of cross-examination has been substantially and fairly exercised that the allowance of cross-examination becomes discretionary with the trial court. *Fahey* v. *Clark,* 125 Conn. 44, 48, 3 A.2d 313; *Gruskay* v. *Simenauskas,* 107 Conn. 380, 384, 140 A. 724; *Bishop* v. *Copp,* 96 Conn. 571, 575, 114 A. 682.

Since the witness obviously used a document to

refresh his recollection, the plaintiff's counsel had a right to examine it. *State* v. *Grimes,* 154 Conn. 314, 323, 228 A.2d 141; *Neff* v. *Neff,* 96 Conn. 273, 281, 114 A. 126; 3 Wigmore, Evidence (3d Ed.) § 762. The court in its discretion could certainly refuse to admit the deposition on the ground that the plaintiff was deprived of complete cross-examination. *F. Thill's Sons & Co.* v. *Perkins Electric Lamp Co.,* 63 Conn. 478, 485, 29 A. 13. There has been no showing that the court abused its discretion in ruling that the refusal of the witness and the defense counsel to permit inspection of the document unduly restricted the plaintiff's right to a full cross-examination.

The plaintiff sought damages for loss of sales of franchises, yearly royalties, commissions on equipment and supplies, expenses in developing his distributorship, loss of profits from business which would have existed had the defendant performed his contract, and loss due to anticipated termination of the distributorship franchise (which had occurred at the time of the hearing). The court found damages for expenses incurred in developing the distributorship, loss of profit from the outlet that was to have been built by the defendant and loss due to the termination of the distributorship franchise. The court determined that the other items of damages claimed were not sufficiently established to justify recovery. The defendant attacks the award of damages as being speculative and unsupported by the evidence.

In an action for breach of contract, the general rule is that the award of damages is designed to place the injured party, so far as it can be done by money, in the same position as he would have been in had the contract been performed. *Bachman* v.

*Fortuna,* 145 Conn. 191, 194, 141 A.2d 477; *Belisle* v. *Berkshire Ice Co.,* 98 Conn. 689, 700, 120 A. 599. There are no unbending rules as to the evidence by which such damages are to be determined. *Lee* v. *Harris,* 85 Conn. 212, 214, 82 A. 186.

The plaintiff, on December 6, 1967, was an "area distributor" for a limited area. He first acquired a half interest in the area distributorship for $12,500 and later acquired the remaining half interest for $4500 or $5000. The contract was considered breached at the time this action was commenced on September 9, 1968. The plaintiff's distributorship was revoked by the franchisor on June 10, 1969. It is to be noted that the complaint is dated September 9, 1968, and it was filed September 16, 1968, about nine months prior to the loss of the area distributorship franchise. The complaint does allege in substance that the franchise was in jeopardy of being forfeited and damages were prayed for this item. The complaint was, therefore, sufficient for the court to make an award for loss of the franchise. Although the court found that the damages for loss of sales of franchises, yearly royalties, commission on equipment and supplies was too speculative and not established, it did award damages for the loss of the area distributorship franchise. The court awarded damages for "the loss of the sum of $25,000 paid for his area distributorship." The finding indicates that the plaintiff paid no more than $17,500 for the franchise. Since the court found that the breach of contract was the cause of the loss, damages to the plaintiff were the value of the franchise at the time of the breach and this amount was not necessarily the amount originally paid for it. 22 Am. Jur. 2d, Damages, § 52. The finding is silent as to whether the court considered only the contract

price or whether it determined that the contract price was an accurate representation of the worth of the franchise at the time of the breach. The finding as it exists is insufficient to support the amount of the award for loss of the distributorship franchise as found by the court. The defendant in the draft finding seeks to add to the finding the fact that the franchisor went out of business in May, 1970. It is unknown whether the court disbelieved this evidence or found it immaterial. Damages have to be determined at the time of the breach of the contract even though it could be shown that the plaintiff would have sustained damages some other way. *Hubbard v. New York, N.H. & H.R. Co.,* 70 Conn. 563, 564, 40 A. 533. The evidence of the subsquent business failure of the franchisor, even if credible, is irrelevant to the worth of the franchise at the time of the breach of contract.

The defendant asserts that the award for loss of profit was speculative as there was no prior experience from which the court could base its award. "Prospective profits are not recoverable unless they are reasonably certain to result from the breach of the contract; but mere uncertainty as to their amount may be dispelled by the same degree of proof as is required in other civil actions, that is, the amount may be determined approximately upon reasonable inferences and estimates." *Tompkins, Inc. v. Bridgeport,* 94 Conn. 659, 661, 685, 110 A. 183; *Bridgeport v. Aetna Indemnity Co.,* 91 Conn. 197, 205, 99 A. 566.

The court awarded $21,000 for loss of profit for the outlet contemplated by the contract. The defendant claims that the findings do not support the conclusion that "[t]he net profit on that gross [$175,000] would have been at least 12%." The

court's unattacked finding established that the location of the contemplated unit in Danbury was not materially different from that of a "Heap Big Beef" outlet in Orange in which the operator grossed $175,000 and had a net profit of 12 percent of his gross receipts. "Net profit can be defined as the gross amount that would have been received pursuant to the business less the cost of running the business." 22 Am. Jur. 2d, Damages, § 178. To determine the cost of operating a business, the factors of production must be analyzed. One important factor of production is labor. When an individual operates his own business, his labor must be accounted a cost of production since by employing himself he accepts the opportunity cost implicit in being unable to work for wages at some other occupation. The finding here discloses that an operator at a similarly located outlet had gross receipts of $175,000 and *"his* net profit was 12% of *his* gross receipts." (Emphasis added.) This finding does not disclose whether the operator has fully accounted for his own labor and therefore deducted the value of his own labor in running the business before establishing a net profit percentage. In view of the addition to the finding of facts that the plaintiff intended to hire another person to manage the Danbury location, uncertainty regarding the meaning of the term "net profit" as used in the finding is evident. Since the court's conclusion that the plaintiff would have earned a 12 percent net profit is dependent on an uncertain finding and testimony in the appendix, this court, in order to supplement and explain the evidence in the appendix, will look to the transcript to determine what the operator intended by his use of the term "net profit." Practice Book § 721. The transcript discloses that under

questioning by the court, the operator of the outlet in Orange testified that the figure of 12 percent net profit was determined by an accountant and represented gross receipts less all expenses except the value of his services and that of his partner represented by "drawings." Consequently, the 12 percent figure used by the court representing net profit includes the value of the services of the operator or operators of the comparable operation. Since the plaintiff would not have given his services but would have employed a manager for his outlet, it is not clear that he would have enjoyed a similar profit margin. The court's conclusion that the plaintiff would have had a net profit of at least 12 percent on that gross is, therefore, not logically consistent with the facts found and it cannot be sustained.

The final item of damage found by the court was the expenses incurred by the plaintiff in attempting to develop his distributorship. While the amount found is well-supported by the finding, the value of the area distributorship at the time of the breach is the proper measure of damages and of necessity the expenses to develop this valuable property cannot also be included as damages suffered. If these amounts were expended to produce profits and develop the distributorship, they are not collectible in addition to the value established for lost profits and the loss of the value of the area distributorship. Whether these expenses are recoverable in the event that either the amount of lost profit or the value of the distributorship is not established or claimed would be a matter for the trial court on the evidence presented on the retrial.

The court was not in error in determining a breach of contract on the part of the defendant but was in error in the determination of the damages.

There is error in part, the judgment is affirmed except as to the amount of damages awarded and a new trial is ordered limited to that issue.

In this opinion the other judges concurred.