**PAULINE'S CHICKEN VILLA, INC., Movant,**

v.

**KFC CORPORATION, Respondent.**

Supreme Court of Kentucky.

Oct. 31, 1985.

As Corrected Nov. 1, 1985.

Rehearings Denied Jan. 16, 1986.

Walter J. Swyers, Jr., Alex F. Talbott, Karen A. Conrad, Louisville, for movant.

William C. Boone, James E. Milliman, Barbara R. Hartung, Louisville, for respondent.

GANT, Justice.

Pauline M. Houchen has owned and operated six Kentucky Fried Chicken franchises since 1962, and at the time of this litigation had two operating under corporate names in Clarksville and Jeffersonville, Indiana. In the summer of 1978 Mrs. Houchen and her manager learned that a competitor was interested in obtaining a prime site in Clarksville, at the intersection of Interstate 65 and Indiana Highway 131, and contacted the respondent. Respondent encouraged movant to purchase the site, which was accomplished. On May 16, 1979, respondent issued a franchise relocation agreement for the new site and contemporaneously gave a letter to movant by which respondent agreed that movant could continue to operate its existing franchise in Clarksville, which would become an additional franchise if movant was satisfied, after a one-year test period, that the additional franchise was economically viable.

The construction of the new facility was never accomplished and respondent rescinded the contract and franchise agreement.

Movant brought this action for breach of contract utilizing as its sole basis for damages the loss of profits occasioned by the breach. The trial court directed a verdict for the respondent on the question of breach of contract, rendering moot any question of what damages would be allowed, but did, parenthetically, make the following finding:

5. Plaintiff's choice of remedy, recovery of lost profits, under the facts and circumstances of this case, is not an allowable measure of damages recoverable under Kentucky law and Plaintiff failed to offer proof of any other measure of damages.

On appeal, the Court of Appeals reversed the directed verdict and remanded for a new trial, holding that there was sufficient evidence of waiver and lack of demand that the question of breach of contract should be submitted to a jury. However, on remand, the Court of Appeals limited damages to "measures of recovery" other than lost profits. It is this limitation which is the first argument presented on discretionary review. It is noted there is no Cross-Petition for Discretionary Review herein from the decision of the Court of Appeals remanding for a new trial and thus no necessity to pass upon the sufficiency of the evidence at the first trial relating to loss of profits.

In examining this point, the court must confront the "new business rule." This rule has tautologically become one which states that lost profits cannot be recovered on behalf of an unestablished business because without a history of past profits the existence of any profits that might be realized in the future but for the breach of contract cannot be proved with the requisite legal certainty necessary to allow recovery.

Both movant and respondent and the Court of Appeals have referred to, relied upon or sought to distinguish the case of *Brundige v. Sherwin-Williams Co.*, Ky. App., 551 S.W.2d 268 (1977). That case contains an excellent history of the development of the "new business rule" in Ken-

tucky and in other jurisdictions, especially relating to cases since *Holliday v. Sphar*, 274 Ky. 556, 119 S.W.2d 656 (1938). Although the facts in *Brundige* are readily distinguishable from the case before us, the ultimate holding of *Brundige* was that where lost profits in an unestablished business are alleged as damages for breach of contract, they may be awarded if such lost profits may be proved with reasonable certainty. It is our opinion that this is the law in Kentucky and to the extent that *Holliday, supra*, may be interpreted as adopting the "new business rule," as previously defined herein, it is expressly overruled.

The rule in this state is that which is set out in Restatement (Second) Contracts, § 352: "Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty."

Thus, the test is not whether the business is a new or unestablished one, without a history of past profits, but whether damages in the nature of lost profits may be established with *reasonable certainty*. Comment b in the Restatement, *supra*, sums it up as follows:

However, if the business is a new one ... proof will be more difficult. Nevertheless, damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like.

No court, including this one, can elucidate a single definition of "reasonable certainty" which may be used as a yardstick in all cases. However, this is a case containing factors and elements which eliminate virtually all the uncertain variables. This is a national franchisor, with uniformity of national advertising, uniform quality control, earnings and expense figures on nearby and comparable locations, and an available history concerning success and failure ratios. The franchisee, likewise, is experienced in the field and with the specific product, with a proven record

of operation and management, a history of profit and loss, with two current operations in the general area, etc. *See Smith Development Corp. v. Bilow Enterprises, Inc.,* 112 R.I. 203, 308 A.2d 477 (1973), and *Gordon v. Indusco Management Corp.,* 164 Conn. 262, 320 A.2d 811 (1973).

■ However, there is an equivocal side to this coin. Examination of the record and the evidence discloses there were two agreements between movant and respondent. The first was a "relocation agreement" and called for the transfer of the existing outlet at 1117 Eastern Boulevard in Clarksville, Indiana, to the new site at 1115 Highway 1313 in the same city, of course upon performance of certain conditions. Thus, the lost profits for breach of that agreement, if any breach occurred, would necessarily be restricted to the difference between the profits enjoyed by movant at the Eastern Boulevard outlet, readily ascertainable from existing records, and the anticipated profits at the new site, providing that the latter could be established with reasonable certainty.

■ The second agreement was that, after the relocation was accomplished, movant could continue to operate the "existing outlet" on a trial basis, month-to-month, for twelve months, again subject to certain conditions. At or during the trial period and upon performance of the conditions, movant was granted the right to a "new" franchise for the "old" location. The issue of damages from the loss of anticipated profits from the former location after the new operation commences and the relocation is completed is a matter of entirely different proof. That the parties to this action consider the fate of the existing location to be speculative in nature is evinced by the month-to-month trial basis contained in the second agreement. It is the opinion of this court that under these conditions such loss of anticipated profits from breach of the second agreement, if such breach occurred, would be so speculative that they could not be ascertained with the requisite "reasonable certainty."

We reverse the trial court on its holding that lost profits are not recoverable under the facts of this case, that holding being based upon the statement of the trial court that they are not "an allowable measure of damages." This action is remanded to the trial court for a new trial on the merits and, if a breach of the "relocation agreement" is determined, damages may be awarded in an amount representing the difference in profits between the two locations, as set out herein. Further, on remand, no damages under the possible "new franchise agreement" for the former outlet shall be allowed.

The second issue which is raised before us was the subject of an amended complaint filed herein some 14 months after the original complaint and almost five years after the alleged breach of contract which was the subject of the amendment (known as a G & K Amendment) to its franchise agreement which, in essence, required the franchisor to notify the franchisee of the establishment of any "new franchised outlet" in a certain territory and to negotiate with movant before selling to another person. An outlet, not involved in any manner with the previous issue, had been operated as a "company-owned store" for many years, and respondent decided to convert this to a franchised outlet. Although it was within the territory covered by movant's franchise, respondent did not notify movant of its decision. However, movant learned the facts and made an "offer" to respondent. This "offer," an oral communication, was for $93,000 and $1.00 over any other bid.

■ Movant herein contends this was, in fact, a "new franchised outlet" within the meaning of the franchise agreement and that this triggered the G & K Amendment, asking us to remand for proof of this fact. This is unnecessary, as we agree that the conversion of an "operating company outlet" to a "franchised outlet" is unquestionably a "new franchise" within the meaning of the agreement, and no further proof would be necessary.

However, movant must still fail in its effort to reverse the lower court and the Court of Appeals. The latter, we might add, affirmed the summary judgment of the trial court, but for the wrong reason.

The clause which forms the basis for this part of the action reads as follows:

*NEW FRANCHISED OUTLETS.*

Before permitting the establishment of any new franchised outlet at a location closer to FRANCHISEE's outlet than to any other franchised outlet (except pursuant to commitments made before this provision goes into effect), FRANCHISOR shall be obligated to give FRANCHISEE 30 days' prior written notice of such proposed action. During such 30 day period, FRANCHISEE may apply to FRANCHISOR for a franchise to operate an outlet at such proposed new location and FRANCHISOR shall negotiate in good faith with FRANCHISEE regarding said application, taking into consideration all (1) the established past and present operational performance and financial capacities of FRANCHISEE, (2) whether he is currently in compliance with financial and other obligations to FRANCHISOR and under his franchise agreements, and (3) efforts of FRANCHISEE that have contributed to the development of consumer demand for Kentucky Fried Chicken locally and elsewhere.

The failure to notify the movant did not constitute a breach of the G & K Amendment, inasmuch as movant admits actual knowledge. However, that portion above quoted requires that the movant "apply" for the franchise before the good faith negotiations are to be commenced by the respondent. The lower court found that the uncontested facts herein did not constitute an application within the requirements of the contract and thus no negotiations were necessary. We agree with the trial court, and thereby affirm on this issue.

STEPHENS, C.J., and AKER, GANT, LEIBSON, STEPHENSON and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents.