[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff seeks to foreclose a mechanic's lien, and to recover damages with reference to a residential dwelling he constructed for the defendants. That structure is a second home for the defendants who reside primarily in New York.
The defendants have counterclaimed that the plaintiff failed to complete CT Page 1516 the home in a timely manner, did not comply with the contractual cost of the structure, and negligently constructed the home with respect to zoning regulations concerning setback requirements so as to eliminate a lake-front deck on the exterior of the home.
The defendants claim damages on their counterclaim. The court heard predictably conflicting testimony from the plaintiff and the defendant Alvin Chumsky with respect to the negotiations and conversations leading to their agreement that a 2,000 square foot home be built on a rather small lot on Lake Washimee in Salisbury. Based upon the evidence presented the court make the following finding. The parties were introduced by Mr. Alfred Higger in May of 1986. Mr. Stack had performed work for Mr. Higger earlier, and the subject property was close to the Higger property. Furthermore, plaintiff was in the process of constructing a home in the same area. Because the defendants did not want to expend money to hire an architect, Home Design Service of New Britain drew plans for the home. Both parties participated in discrete aspects of those plans, the plaintiff on site work and the defendants on design work.
During a variety of conversations, a number of cost estimates were given as to the completion cost of the house. No written contract was ever signed.
The duration of construction was the topic of great concern. While commenced in the fall of 1986, the home was not completed until the fall of 1988, when the plaintiff was asked to leave the project. A Certificate of Occupancy was issued in June of 1988.
During that time, in addition to winter seasons, there appeared to be a problem in placing a septic system on the property. That issue was raised by adjoining property owners, but resolved between the parties by the placement of the system on a parcel of land owned by the plaintiff over which he gave the defendants an easement at no charge. That did increase the cost of the project in that the sewer cost was $17,000.00 rather than the $15,000.00 originally estimated.
In the months that ensued no further work was done on this project. The plaintiff did other jobs during this time also occasioning delay. The delays in construction caused two problems. First, the relationship of trust which had been formed, foundered. Second, the defendants had the opportunity to reflect on changes that they desired both in the quality of interior work, and in the scope of those changes.
In essence, the gravamen of the dispute between the parties was the agreed-upon final price of the house and the inclusion of "extras". CT Page 1517
The credible testimony revealed that the parties negotiated frequently concerning the composition of the house, with changes concerning whether or not the house would contain a breezeway and/or a garage. The design clearly called for a deck. The size and necessity of a breezeway joining the house and garage was important because of the small size of the lot and the zoning regulations of the Town of Salisbury.
Ultimately the defendants decided to have the garage and breezeway in addition to the house. The plaintiff indicated that the breezeway could be added and leave enough room for the installation of the deck. That assessment proved to be incorrect.
The construction process was lengthy and it appears that the defendants stated expectations for completion date were not met. However, time was not of the essence. The parties continued to deal with one another from the initial proposal of August 6, 1986 (Exh. 1) through 1988. There was an obvious strain in the relationship because of slow work and the plaintiff's attempt to comply with "extras" while maintaining the agreement of the parties.
The defendants claim in their brief that the plaintiff is not entitled to "specific performance". The plaintiff's complaint seeks foreclosure of a mechanic's lien and damages. The defendants claim that there was not an enforceable contract because the plaintiff did not substantially complete the project as contemplated by the parties, and that there could not be inferred by the court a contract. They claim that the finished product was not substantially the same as that contemplated at the time of the original contract. Randolph Construction Co. v. King's East Corporation,165 Conn. 269, 274, 334 A.2d 464 (1973); Furthermore, the defendants agree that the contract price had been modified by renegotiation, and that the plaintiff continued to complete the work on the project despite the fact that the last payment was made on the contract on April 26, 1987. The modification, agreed to by the parties at trial, took place on or about December 1, 1989, and is plaintiff's exhibit 1 and defendants exhibit 5. The agreement was made and plaintiff continued to complete the work without payment for approximately twelve (12) months. The parties mutually assented to the modification. Harris Calorific Sales Co. v. Manifold Systems, Inc.,18 Conn. App. 559, 563 citing Gordon v. Indusco Management Corporation,164 Conn. 262, 267-8, 320 A.2d 811 (1973); Taft Realty Corporation v. Yorkhaven Enterprises, Inc., 164 Conn. 338, 342, 150 A.2d 597 (1959). The court can reasonably find that the parties intended to continue construction at the modified price, and, in fact, continued to make changes which upgraded the modification. CT Page 1518
The defendant, Alvin Chumsky, could not recall specifically when changes were made. He claimed any changes were minor. The court found more credible the plaintiff, Mr. Stack's testimony with respect to the changes. While the testimony of the parties was highly-emotionally charged, the court finds that the plaintiff proved the following elements of damages.
The court finds the final balance due on the contract per the December 1, 1987 contract to be $38,370.00. The defendants concede in their brief that the amount due from them is $31,810.00 and the court does not agree with the defendants computation of a credit against the earlier sum. The court further finds that the plaintiff proved his allegation of the "extras" and the value of those extras at $23,625.00 for a total of $61,995.00. The court will not allow the plaintiff's claims for officers salaries, consultation charges and the like. The court finds the reasonable value of the completed home to be $207,075.00.
The defendants have filed a counterclaim, claiming that the deck they envisioned could not be constructed as planned, based upon the 75 foot setback zoning requirement of the Town of Salisbury. The plaintiff testified that he was familiar with the zoning regulations, and aware that the house, as constructed was required to be 75 feet from the shore of the lake. The defendants met their burden of proof that they were required to compromise the size of the deck and expend $19,000.00 to construct a patio and basement door in lieu of the deck. The defendant, Mr. Chumsky, opined that the loss of the deck was worth $20,000.00 to him. mere was no evidence to support the claim, and his view is regarded as speculative by the court.
However, the court finds compelling the claim of defendants on the counterclaim. It is clear that plaintiff realized that the deck as planned would not comply with the zoning requirements. The court finds the issues on the counterclaim for the defendants in the amount of $19,000.00.
Judgment shall issue for the plaintiff on the complaint in the amount of $61,995.00. Judgment shall issue on the counterclaim in favor of the defendants in the amount of $19,000.00. Said judgment on the counterclaim shall be set-off against the Judgment for the plaintiff on the complaint for a total effective judgment for plaintiff in the amount of $42,995.00.
Judgment of foreclosure of the mechanics lien is entered. The parties are directed to file appropriate motions to set terms of foreclosure by March 8, 1993.
DRANGINIS, J. CT Page 1519