[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties contest an arbitrators' award. The plaintiff, Carlin Contracting Co., Inc. (Carlin), brought this action to vacate the award. The defendant, Blakeslee Arpaia Chapman, Inc. (B-A-C), has moved for confirmation of the award. Both parties rely on statutes each deems applicable. C.G.S. §§ 52-418 and52-420 (Carlin) and C.G.S. § 52-417 (B-A-C).
Carlin contracted with the Water Pollution Control Authority of the City of Bridgeport to do certain rehabilitation work on the East Side Wastewater Treatment Plant. As general contractor, Carlin subcontracted B-A-C to do certain of the work called for in the Bridgeport-Carlin general contract. This Carlin — B-A-C subcontract is dated March 10, 1997. According to the subcontract, B-A-C was to do certain excavation and piling work.
Regarding arbitration, the subcontract provided:
 "Disputes arising out of Owner acts, omissions or responsibilities shall be resolved in accordance with the disputes procedures in the Prime Contract. Subcontractor shall have the right to exercise those rights at its sole cost and shall be bound thereby. Contractor shall have not direct liability except to give Subcontractor opportunity to exercise its rights under the Prime Contract. Where the claim in dispute includes more than just this Subcontractor's work, Contractor shall reasonably pursue the claim including Subcontractor's portion and subcontractor shall have full responsibility for preparation and presentation of its elements of the claim and shall bear all expenses thereof including attorneys' fees allocable to its portion of the claim. Subcontractor shall not be entitled to receive any greater amount from Contractor than contractor receives from the Owner on account of Subcontractor's work, less costs and/or legal fees incurred by Contractor in pursuing the claim and markups to which Contractor is entitled; and, CT Page 2395 Subcontractor shall accept such amount, if any, received by Contractor from Owner as full satisfaction and discharge of its elements of claim. Disputes solely with Contractor shall be resolved by arbitration in Waterford, Connecticut in accordance with the rules of the American Arbitration Association. Disputes shall not interfere with the progress of the job. Work shall proceed as ordered, subject to claim." [Italics added.]
On January 20, 1998, B-A-C filed a demand for arbitration as "A PARTY TO A WRITTEN AGREEMENT DATED ___3/10/97___ PROVIDING FOR ARBITRATION . . . . B-A-C described the nature of the dispute as "Non-payment under terms of construction contract." B-A-C stated the amount of its claim was $250,000.00. B-A-C informed it estimated the time needed overall for hearings was 4 days.
Arbitrators were selected. Ten days of hearing were held over the period October 5, 1998 to March 4, 1999. On June 18, 1999, the arbitrators rendered an award. The key provision states:
 "On the claim of Blakelee Arpaia Chapman, Inc. (Claimant) against Carlin Contractors, Inc. (Respondent), We award Claimant the sum of $407,006.00 plus interest of $62,489.34, plus attorneys fees of $68,900 to be paid by Respondent." Award of Arbitrators, Exhibit I to Complaint (Application To Vacate Arbitration Award And For Order To Show Cause, July 20, 1999.[101]
The threshold, and practically speaking dispositive, issue is the authority for the arbitration and the resulting award. Further facts are necessary to make this determination.
There is no question the parties had agreed to arbitrate. Carlin claims the arbitration clause's "[d]isputes solely with Contractor [Carlin]" restricted arbitration to disputes between B-A-C and Carlin regarding work B-A-C was required to perform under the subcontract. According to Carlin, "[d]isputes arising out of Owner acts, omissions or responsibilities" were not to be resolved by arbitration between Carlin and B-A-C, rather the latter were to be resolved under the provisions of the Prime Contract, the contract between Carlin and the City of Bridgeport. As stated, B-A-C filed its demand for arbitration on January 20, 1998. Its demand then was for $250,000.
Carlin began its work on April 27, 1997. "As of February 10, CT Page 2396 1998, BAC completed all of its obligations under the Subcontract, except those obligations that Carlin directed BAC not to perform until further notice. As of February 10, 1998, BAC had submitted 10 invoices to Carlin in the total amount of $559,565.08 . . . ." Memorandum of Blakeslee Arpaia Chapman, Inc. In opposition To Motion of Carlin Contracting Co., Inc. To Vacate Arbitration Award, August 18, 1999, p. 3. [103] "As of February 23, 1998, Carlin had been paid $400,114.15 for work performed by BAG, but had paid BAC only $236,068.78, leaving a shortfall of $164,045.37." Id., p. 4.
On March 5, 1998, B-A-C wrote to Carlin as follows:
 "This firm represents Blakeslee Arpaia Chapman, Inc. ("BAC"). This letter is to advise you that BAC is exercising its right to terminate further performance on the above referenced project. The basis for BAC's termination is fully set forth in the attached letter to your surety, Safeco Insurance Company of America, which is incorporated herein and made a part hereof. This letter is also to advise you that BAC is making a claim pursuant to § 49-41a of the Connecticut General Statutes and is making a claim against your payment bond pursuant to § 49-42 of the Connecticut General Statutes, as is fully set forth in the attached letter to your surety." Letter from Attorney William J. Egan to Carlin Contracting Co., Inc., March 5, 1998.
On March 5, 1998, Attorney Egan wrote to Carlin's surety, Safeco Insurance Company. That letter stated in part:
"Notice of Termination
 "Carlin's continuing failure to make progress payments when due is a material breach of the subcontract which excuses BAG from further performance and entitles BAG, at its election, to recover in quantum merit for the reasonable value of the labor and materials it furnished to the date of this letter. This letter is notice that BAG is exercising its right to terminate further performance under the subcontract and that it elects to proceed in quantum merit to recover the reasonable value of the labor and materials it has already furnished." Letter from Attorney William J. Egan to Safeco Insurance Company, March 5, 1998.
B-A-C informed Carlin by these letters that it was invoking CT Page 2397 the provisions of C.G.S. § 49-41a and was making a claim against Carlin's payment bond pursuant to C.G.S. § 49-42. Simply stated, this required Carlin to place funds in an interest bearing escrow account for the benefit of B-A-C in an amount equal to what Carlin had been paid by the City for work B-A-C had done but which Carlin had not paid B-A-C. B-A-C claimed this amount was in the order of $147,000.
Carlin characterizes B-A-C's action as a "rescission." According to Carlin, B-A-C's "rescission" renders the contract non-existent and therefore the arbitration provision is wiped out along with the entire contract. B-A-C counters relying on BatterBuilding Materials Co. v. Kirschner, 142 Conn. 1 (1954), andInternational Brotherhood v. Trudor Platt Motor Lines, Inc.,146 Conn. 17 (1958). Those cases did not involve rescission. In a later case in which "rescission" might have been asserted, the Supreme Court stated: "The question whether the plaintiff could enforce the arbitration clause if it sought rescission is not before us." A. Sangivanni Sons v. F.M. Floryan Co.,158 Conn. 467, 472-3 (1969). It is noted that a discussion of BatterBuilding and International Brotherhood appears in the paragraph right after the paragraph of the quoted sentence. Thus, the Supreme Court had in mind its holdings in those cases when it decided A. Sangivanni Sons v. F.M. Floryan Co.
The court is not aware of any Connecticut appellate authority to the effect that a party's claim to have rescinded a contract nullifies an arbitration provision within the contract.
There is a Superior Court case which may hold that a rescission of a contract nullifies an arbitration clause in the construction contract. M L Building Corp. v. CNF Industries,Inc., Superior Court, judicial district of Tolland at Rockville, Docket No. 50204 (July 6, 1992, McWeeney, J.) (7 C.S.C.R. 871). In M L Building, M L Building had contracted with CNF Industries to build a new headquarters building for CNF. Relations broke down well before the building was completed. The matter went to arbitration where M L Building prevailed. "CNF claim[ed] the arbitrators rescinded the contract . . . and by so doing they threw out the arbitration clause thus wresting jurisdiction from the arbitrators." The court seemed to find merit in this position. In so doing, the court relied uponHousekeeper v. Lourie, 39 App.Div.2d 280,333 N.Y. So.2d 932 (App.Div. 1932); appeal dismissed, 32 N.Y. So.2d 832 (1973).Housekeeper involved a claim that the agreement containing the CT Page 2398 arbitration provision was the product of a fraudulent inducement. The court held that a contract that was fraudulently induced was a nullity and any agreement to arbitrate was also nullified. In M L Building, the court stated:
 "In the case at bar the question is not whether there was fraud in the inducement, but rather whether rescission nullifies an agreement to arbitrate contained in the contract. The court's reasoning in Housekeeper, supra, can be applied to the facts in the case at bar. In Housekeeper the court found that if fraud in the inducement vitiated the entire contract, the arbitration clause would not stand. In the case at bar, the rescission would have the same effect as the fraud in the inducement. Therefore, if the question of rescission was timely raised it must be determined by the court." M L Building Corp. v. CNF Industries, Inc., 7 C.S.C.R. 871, 87? (1992).
The argument that rescission of a contract abrogates an arbitration provision within it has considerable appeal. In the abstract, the logic is compelling. The arbitration provision is in the rescinded contract. The rescinded contract has no existence. There is no agreement to arbitrate.
There is clear authority that the rescinded contract has no legal existence. It does not survive even for the purpose of suing on it. Metcalfe v. Talarski, 213 Conn. 145 (1989), concerned a failed real estate transaction. Arbitration was not involved. Prior to closing, one of the buildings which defendant agreed to sell to the plaintiff was completely destroyed by fire. Plaintiff had claimed that the contract was rescinded. The trial court held that plaintiff's claim of rescission barred plaintiff from claiming damages for breach. The Supreme Court upheld the trial court.
 [T]he effect of a rescission is to extinguish the contract and to annihilate it so effectively that in contemplation of law it has never had any existence, even for the purpose of being broken. Accordingly, it has been said that a lawful rescission of an agreement puts an end to it for all purposes, not only to preclude the recovery of the contract price, but also to prevent the recovery of damages for breach of the contract. An election to rescind a contract waives the right to sue upon it. After rescission for a breach, there is no right to sue on the contract for damages for such breach. CT Page 2399 17 Am. Jur.2d, Contracts 516, pp. 1002-1003. Furthermore, this court has stated that [a] definite election to rescind a contract is final and operates as a waiver of any claim for damages for any breach of the contract; Gordon v. Indusco Management Corporation, 164 Conn. 262, 266, 320 A.2d 811
(1973) and that [h]e who elects to rescind a contract can claim nothing under it. Jones v. Brinsmade, 183 N.Y. 258, 262, 76 N.E. 22 [1905]; Valente v. Weinberg, 80 Conn. 134, 135, 67 A. 369 [1907]; Janulewycz v. Quagliano, 88 Conn. 60, 64, 89 A. 897 [1914]; 3 Black, Rescission (2d Ed.), 704; Restatement, 2 Contracts, 410, comment b, illustration 2; 12 Am. Jur. 1019, 1038; 13 C. J. 623, 684; 17 C.J.S. 925, 441. Haaser v. A. C. Lehmann Co., 130 Conn. 219, 221, 33 A.2d 135 (1943).
 "Therefore, the trial court properly ruled that the plaintiff's claims for expectancy and reliance damages [could] not be sustained by reason of the plaintiff's unequivocal exercise of his right of rescission." [Internal quotation marks omitted.] Metcalfe v. Talarski, 213 Conn. 145, 159 (1989).
But what of the rescinded contract. Does it vanish into thin air to be treated like it never existed? No. It survives at least for some purposes. It is evidence that the parties to it were not total strangers and had some relationship regarding the subject matter of the rescinded contract. It may act, at least to some degree, to define the parameters of the subject in dispute. Thus, in the instant case, the subcontract survives to show that Carlin and B-A-C had entered into some arrangement regarding work at the sewer plant. It continues to exist to show what that arrangement was. It shows that B-A-C was to do certain excavation and piling work.[1] The rescinded subcontract has some continued vitality. Necessarily the subcontract here was the focal point of the dispute. B-A-C claimed it had done what was required of B-A-C by the subcontract. Carlin disputes that claim and also claims B-A-C's "refusal to sign proposed change orders and otherwise perform the procedural requirements agreed to by Blakeslee in the Subcontract prevented additional payments from becoming due under the Section 3 of the Subcontract." Memorandum Of Law In Support of Application To Vacate Arbitration Award, September 10, 1999, p. 3, ¶ 7. [104]
B-A-C claims that Carlin's breach was so egregious it excused B-A-C from further performance under the subcontract and entitled CT Page 2400 B-A-C to recover in quantum meruit for the labor and materials furnished in furtherance of the subcontract.
Arbitration wise, this case differs markedly from a case involving contract which was fraudulently induced. Where a contract has been fraudulently induced, the grounds for its rescission arise at a time no later than its execution, that is no later than when it is supposed to have been made. The fraudulently induced contract can readily be said to have never existed in fact. The fraud vitiates the contract ab initio. There never was a true meeting of the minds and thus the contract never came into being. Any arbitration provision in such a rescinded "contract" would not have come into existence either.
The situation here is quite different. There is no question the subcontract was made, i.e., existed. Both parties set about to do what the subcontract called for. Then events caused accusations and finger-pointing to start. Each side claimed the other was not living up to the terms of the subcontract. B-A-C claimed the matter for arbitration. Then, it claimed it had no obligation to perform any further and that it was entitled to recover in quantum meruit. Carlin argues that B-A-C rescinded the contract.
The court is not certain that B-A-C's action amounted to an election to rescind. B-A-C did not use the words, "rescind" or "rescission." Some of the cases it relies upon do use the term "rescission." The case law seems clear: nonpayment justifies termination of further performance and entitles recovery inquantum meruit for the reasonable value of the labor and materials furnished in the performance of the contract. And, it may be that this is a functional equivalent of rescission.
The court does not decide whether B-A-C rescinded.
If there was no rescission, the arbitration provision stands.
Even if Carlin is correct in its claim that B-A-C rescinded, in the context of this case, the arbitration clause does not vanish into thin air as though it never existed. The question of rescission, if B-A-C actually claimed rescission, is firmly interwoven with the factual and legal questions regarding of Carlin's and B-A-C's claims of the others' defalcations under the subcontract. The arbitration clause was unrestricted regarding disputes between and B-A-C and Carlin regarding the work called CT Page 2401 for in the subcontract. Work caused by the City of Bridgeport (the owner) was outside what was to be arbitrated. B-A-C could claim rescission but to get the benefits of rescission had to prove and persuade the arbitrators that it (B-A-C) was entitled to rescission. To determine whether rescission was justified, the arbitrators would have to hear the parties, probably in full, before they could come to a decision on whether rescission was justified. If, at that time, the arbitrators concluded that rescission was in order, according to Carlin, the arbitrators then would have stripped themselves of authority to act because the contract no longer existed and never had existed at all, The arbitrators' charter, the arbitration provision, a part of the contract which never existed logically never existed.
This court must predict what our Supreme Court would do in this situation. By statute, C.G.S. § 52-408 et seq., arbitration is sanctioned. The Supreme Court has been constant and resolute, indeed, even enthusiastic, in upholding voluntary arbitration. While the Supreme Court expressly stated that it did not decide whether an arbitration clause survived where a contract was claimed to have been rescinded, this court cannot see how the rationale espoused in Batter Building would not, and should not, prevail in this case. This is not to say that Carlin's argument does not have considerable appeal. However, it cannot prevail under the circumstances of this case.
The court holds that the arbitrators had the authority to decide this case.
Carlin claims that arbitrators' award is fraught with error. The statute authorizing vacation of an award provides:
"Sec. 52-418. Vacating award.
 "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon CT Page 2402 sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." C.G.S. § 52-418 (a).
Carlin relies on the fourth ground. "The arbitrators ignored Carlin's objections and issued their award. In so doing, the Arbitrators exceeded their powers, or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter was not made, which is prohibited by C.G.S. §52-418(a)(4)." Memorandum of Law In Support of Application To Vacate Arbitration Award, September 10, 1999, p. 8-9.
The court has reviewed each of Carlin's claims.
The primary claim that Carlin makes is that the arbitrators award includes damages for work that was not subject to arbitration between Carlin and B-A-C. "In particular, Carlin continuously protested that much of Blakeslee's claims out of alleged acts, omissions and responsibilities of the Owner and therefore were not subject to an arbitration solely between Blakeslee and Carlin under the restricted arbitration clause." Memorandum of Law In Support of Application To Vacate Arbitration Award, September 10, 1999, p. 8. The court agrees that "[d]isputes arising out of Owner acts, omissions or responsibilities [were to] be resolved in accordance with the disputes procedures in the Prime Contract." Carlin correctly states the submission was "restricted" to resolution of disputes arising under the Carlin — B-A-C subcontract. The arbitration award would be improper to the extent it included compensation for B-A-C for work, etc., caused by the City's "acts, omissions or responsibilities."
According to B-A-C, its claim(s) arose under the subcontract. Carlin's says: "All of Blakeslee's alleged extra costs were due to acts, omissions or responsibilities of the Owner. These included unanticipated underground obstructions during pile driving operations at the vehicle complex in the amount of $175,392. and for obstructions encountered at the degritter building in the amount of $47,706.58." Memorandum of Law In Support of Application To Vacate Arbitration Award, September 10, 1999, p. 3, ¶ 6. Obviously, the evidence to support the CT Page 2403 positions asserted by the parties was interwoven. The arbitrators had to determine from that evidence and by evaluation of the contract and subcontract whether B-A-C's claims arose under the subcontract or were due to the City's "acts, omissions or responsibilities." Carlin in challenging the award has presented only supposition that the arbitrators improperly included compensation arising from the City's "acts, omissions or responsibilities."
The record does not compel a conclusion by the court that the award included compensation for work, etc., that was outside the subcontract or for damages incurred due to the City's "acts, omissions or responsibilities.
But of greater significance is the law governing judicial review of arbitration awards. Even if the arbitrators erred in concluding what was properly compensable as subcontract work, the award must stand. In order to decide the "restricted submission," the arbitrators had to examine and evaluate the conflicting positions of the parties. At the least, questions of fact and contract interpretation were involved. Ordinarily, error by an arbitration tribunal in resolving questions of fact and/or law is not grounds for upsetting an award.[2] That one side or another believes the arbitrators erred in resolving these questions is not enough to vacate the award. Nothing in the record comes close to showing the arbitrators "exceeded their powers" or "imperfectly executed" them. The record does not show the award included compensation for anything outside the submission, i.e., for "Blakeslee's alleged extra costs [which] were due to acts, omissions or responsibilities of the Owner."
Carlin also claims that the arbitrators improperly allowedquantum meruit even though B-A-C had substantially completed its subcontract work. See John T. Brady Co. v. Stamford,220 Conn. 432 (1991). Substantial completion was a fact to be resolved by he arbitrators. Again, error made in resolving issues of fact or in applying the law ordinarily cannot be the basis for vacating an award.
Carlin also claims the interest award of $62,489.34 violates the plain terms of the statute, C.G.S. § 49-41a. This argument is predicated on Carlin's assumption that the interest award was entirely grounded on a violation of C.G.S. §49-41a. This may not be the case as the arbitrators could award interest for damages other than for a § 49-41a violation. CT Page 2404 Carlin has not shown the interest award violates public policy and should therefore result in the court's vacating the award.
"The entire award, but especially the award of [$68,900 in] attorneys fees represents a manifest disregard of the law by the arbitrators." Memorandum of Law In Support of Application To Vacate Arbitration Award, September 10, 1999, p. 17.
Manifest disregard of the law by arbitrators is a grounds for vacating an award. It "is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." Saturn Construction Co. v.Premier Roofing Co., 238 Conn. 293, 304 (1996).
There is a test for establishing manifest disregard of the law.
 "The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." Saturn Construction Co. v. Premier Roofing Co., 238 Conn. 293, 305 (1996).
The absence of even one of the three elements results in failure of the test to establish manifest disregard of the law by the arbitrators. Here, Carlin has not demonstrated any of the elements. The award cannot be vacated because the arbitration manifestly disregarded the law in making the award.
Carlin's application to vacate the award must be denied.
B-A-C's motion to confirm the award must be granted.
Judgment shall enter confirming the award.
Parker, J. CT Page 2405