**MUSSELMAN BROTHERS, INC., Appellant,**

v.

**DIAL–HUFF & ASSOCIATES, INC., Appellee.**

No. 90–CA–2800–MR.

Court of Appeals of Kentucky.

March 13, 1992.

Robert G. Stallings, Peter L. Ostermiller, Stallings & Stallings, Louisville, for appellant.

Harold W. Thomas, S. Stewart Pope, Thomas & Dodson, Louisville, for appellee.

Before GARDNER, SCHRODER and WILHOIT, JJ.

WILHOIT, Judge.

This appeal is from a judgment based on a jury verdict awarding the appellee $50,-000.00 on its claim against the appellant for intentional interference with a prospective contractual relationship.

The appellee is a real estate brokerage firm which deals only in the sale of hotel and motel properties. On January 6, 1988, the appellee was contracted by W.B. Terry who held a first lien on a motel in Lexing-

ton, Kentucky, for assistance in finding potential managers or buyers for the motel in the event he was forced to take over management and ownership of the motel, the owners of which were experiencing financial difficulty. Mr. Terry had had prior dealings with the appellee with respect to other motels. In October 1988, Mr. Terry acquired ownership of the motel and notified the appellee of this fact, again requesting its assistance in obtaining a manager or purchaser. No written listing contract was entered into between Terry and the appellee; however, the appellee was promised a "fair and reasonable commission" if the motel was sold to anyone it introduced to Terry.

On December 14, 1988, Brian Dodge, the manager of a motel owned by the appellant, contacted one of the appellee's sales agents requesting that he forward information concerning two motels to the appellant's corporate headquarters. One was a motel in Horse Cave, Kentucky, and the other was the motel in Lexington. That same day the sales agent sent a forty-page property profile on the Lexington motel, as well as a profile on the other motel, to the appellant's headquarters. Over the course of four or five weeks, there were approximately six telephone conversations between the appellee's sales agent and Chester Musselman acting on behalf of the appellant. Mr. Musselman indicated twice that the appellant had "no interest at this time" in the Lexington motel; however, on January 17, 1989, he called the sales agent to inquire if the appellee had an exclusive listing on the Lexington motel.

There was also evidence that Thomas Musselman, Jr., son of the appellant's president, Thomas Musselman, Sr., had contacted W.B. Terry's son sometime between January 4 and January 10, 1989, to arrange a meeting between himself, his father, Brian Dodge, and Mr. Terry and his son concerning purchase of the Lexington motel. A meeting was held on January 10, with the senior Mr. Terry not in attendance. No one mentioned the appellee at this meeting.

On January 12, the appellee's sales agent sent Mr. Terry an offer from a third party to buy the motel for $2,500,000, which provided for a real estate commission of $115,-000 for the appellee. In response he received a call from Mr. Terry advising him that he was negotiating to sell the motel to someone else. On January 23, the sales agent sent Mr. Terry a letter listing the six prospective purchasers it had dealt with in connection with the sale of the motel and stating that if Mr. Terry's negotiations proved fruitless, the appellee would recontact those prospects. Among the six prospects listed was the appellant. The sale to the appellant had been agreed to and was closed the following April. On January 26, Mr. Terry's son sent a certified letter to the appellee advising that the appellant was the purchaser of the motel and that it denied that it had had any contact with the appellee. Enclosed with this letter was a letter from the appellant stating it and its president "have not and were not contacted by a realtor."

Based upon the appellant's denial of any dealings with the appellee, Mr. Terry refused to pay a commission to the appellee, although the evidence at trial was that Terry would have negotiated a sale price to include a commission if he had known of the appellee's dealings with the appellant before agreeing to the sale. This action was begun by the appellee to recover damages for the appellant's alleged intentional interference with a prospective contractual relationship.

■ The appellant first contends that the appellee's claim is barred by the Statute of Frauds, KRS 371.010, which provides that no action may be brought to charge any person upon a contract for a commission for assisting in the sale of real estate unless the contract or some note thereof is in writing signed by the party to be charged. If Mr. Terry could not have been required to pay a commission because of this statute then, the appellant reasons, the appellee could have lost nothing, and under the plain wording of the statute, it

too cannot be charged or held liable by the appellee on an unwritten contract for a real estate commission.

With respect to the appellant's assertion that the Statute of Frauds bars holding anyone liable on an unwritten contract for a real estate commission, we note that the theory upon which this action was successfully prosecuted was not that there had been an intentional and improper interference with an existing contract, but that the appellant had improperly interfered with a prospective contractual relationship. *See National Collegiate Athletic Ass'n v. Hornung*, Ky., 754 S.W.2d 855 (1988).

There was evidence from which it could be inferred that Mr. Terry would have lived up to his agreement to pay the appellee a commission and would have negotiated a sales price to include a commission had the appellant not denied any contract with the appellee and induced Mr. Terry to negotiate as if this were true. Assuming arguendo that the verbal contract was unenforceable and that the appellant could assert that in its defense, it is nevertheless true that Mr. Terry and the appellee had a continuing business relationship which would have resulted in the payment of a commission to the appellee upon sale of the motel to the appellant but for the representations the appellant made to Mr. Terry to induce him to sell the motel to it. *See* Restatement (Second) of Torts § 766B comment c (1979). The Statute of Frauds is not a bar to this action.

■ The appellant also argues that there was insufficient evidence to establish that any interference with the appellee's prospective contractual relationship was either malicious or without justification. One inference to be drawn from the evidence, depending upon what the jury believed, is that the appellant acted only from an unfortunate misunderstanding. Another very clear inference to be drawn is that the appellant intentionally deceived Mr. Terry as to its dealings with the appellee in order to avoid a purchase price into which a

commission had been factored. Such a course of action would constitute an intentional interference without justification, which itself permits an inference of malice. *See Hornung*, 754 S.W.2d at 859.

■ Finally, the appellant argues that there was insufficient evidence to support the amount of damages awarded. On the contrary, there was evidence introduced which showed that, depending upon which of the other prospective buyers the appellee had dealt with became the purchaser, it would have received a commission or fee of $50,000 to $115,000, and we believe the evidence showed with reasonable certainty that this was the amount it lost by reason of the appellant's conduct. *See Roadway Express, Inc. v. Don Stohlman & Assoc., Inc.*, Ky., 436 S.W.2d 63 (1968); *Pauline's Chicken Villa, Inc. v. KFC Corp.*, Ky., 701 S.W.2d 399 (1985).

The judgment of the trial court is affirmed.

All concur.