MICHAEL LENTZ *vs.* METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY.

Middlesex. February 5, 2002. - May 17, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Self-incrimination. *Evidence,* Inference, Joint venturer. *Witness,* Self-incrimination. *Insurance,* Fraud and concealment.

Discussion of the expansion of the rule regarding the permissible adverse inferences to be drawn from the exercise by a nonparty witness of the Fifth Amendment privilege against self-incrimination. [26-28]

At a civil jury trial, the judge properly permitted the defendant insurance company to call two nonparty witnesses who invoked their Fifth Amendment privilege against self-incrimination and properly instructed the jury that they were permitted to draw an adverse inference against the plaintiff insured based upon the witnesses' invocation of the privilege, where the adverse inference sought (i.e., that the witnesses invoked the privilege to avoid inculpating themselves in a criminal joint venture with the plaintiff to defraud the insurance company) was reasonable, reliable, relevant to the dispute, and fairly advanced against the plaintiff. [28-32]

CIVIL ACTION commenced in the Woburn Division of the District Court Department on February 14, 1997.

The case was tried before *Brian R. Merrick,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Bruce T. Macdonald* for the plaintiff.

*David O. Brink (Bruce Medoff & Nathan A. Tilden* with him) for the defendant.

The following submitted briefs for amici curiae:

*Deirdre Harris Robbins* for Barbara J. Krock.

*George P. Lordan, Jr.,* for George P. Lordan, Jr.

*Gregory P. Deschenes & Stephen D. Zubiago* for National Association of Independent Insurers.

SPINA, J. The plaintiff, Michael Lentz, brought this action against his insurer, Metropolitan Property and Casualty Insur-

ance Company (Metropolitan), alleging breach of an insurance contract and unfair or deceptive practices in violation of G. L. c. 93A and G. L. c. 176D, arising from Metropolitan's refusal to cover property damage to Lentz's automobile. Metropolitan denied liability, claiming that Lentz's underlying claim was fraudulent. A jury in the District Court found that Lentz did not sustain any loss, and judgment entered for Metropolitan. Lentz appealed, claiming that the trial judge erred by (1) allowing Metropolitan to call two nonparty witnesses to invoke their privilege against self-incrimination, (2) allowing Metropolitan to ask the jury to draw an adverse inference against Lentz from the witnesses's invocation of the privilege, and (3) instructing the jury that they were permitted to draw such an inference. The Appellate Division of the District Court dismissed Lentz's appeal. Lentz appealed to the Appeals Court. We granted his application for direct appellate review and now affirm the judgment of the District Court.[1]

1. *Background.* On September 9, 1996, Lentz's wife reported to Metropolitan that on the previous day, while driving her husband's 1986 Lincoln Towncar limousine in Chelsea, she was involved in a hit and run accident. She could not identify any witnesses, and no emergency personnel or police were summoned to the scene. Metropolitan's representative scheduled an appointment for an appraisal of the damage to the Lincoln at its Woburn drive-in claims center on Friday, September 13, 1996. Mrs. Lentz completed an operator's accident report that she claimed to have sent to Metropolitan, the registry of motor vehicles, and the Chelsea police. The Chelsea police had no record of her accident report.

Lentz testified that on September 9, unaware of any appointment arranged by his wife, he went to the claims center, where he met with one of Metropolitan's appraisers, Bryan Cook. He testified that Cook asked him questions about the accident, examined the Lincoln, took photographs, and then made out a check payable to him (Lentz), drawn on Metropolitan's account, in the amount of $9,400.53. The next day, Lentz brought the car to his brother's body shop, L&L Collisions (L&L), which

---

[1]We acknowledge the amicus briefs of the National Association of Independent Insurers, Barbara J. Krock, and George P. Lordan, Jr.

confirmed that it could be repaired and painted for $9,400. Lentz, who had previously owned L&L with his brother, worked at least part time for L&L at the time of trial. According to Lentz, who was present for some of the repair work, L&L replaced the "nose," the rear passenger side door, and some moldings on the passenger side, repaired some body damage, and painted the car. Meanwhile, Metropolitan had stopped payment on the check.

At trial, Metropolitan sought to prove that Lentz's claim was fraudulent. Metropolitan first called Paul Donovan, L&L's shop foreman, and Cook, both of whom invoked their privileges under the Fifth Amendment to the United States Constitution in response to questions concerning the appraisal or repair of the Lincoln.

James Bates, Cook's supervisor, testified that he was present at the claims center when Cook allegedly appraised the Lincoln on September 9, and that no vehicle was brought in for appraisal at that time. He also testified that Cook had reported doing no appraisals on that day because he had prearranged to do his appraisals "on the road" instead of at the claims center. Bates expressed disapproval of Cook's off-site appraisals and arranged to review those appraisals the next time they were scheduled to meet, September 11. On September 11, Cook telephoned Bates and told him that his car had been broken into the night before and his laptop computer and other equipment had been stolen. He was thus unable to produce any appraisals. Evidence was presented that Cook previously had appraised other damage claims on unspecified vehicles for Lentz on April 4, 1995, and January 5, 1996, providing Lentz with checks in the amounts of $6,109.69 and $6,461.24, respectively. In total, Cook processed three property damage claims for Lentz involving unidentified third parties, and he paid on behalf of Metropolitan a total of $21,971.46 to Lentz within seventeen months.

Finally, Metropolitan called Gerry Wrightson, who reinspected the Lincoln for Metropolitan at L&L on September 20, 1996. Wrightson met with Donovan, who identified himself as the shop foreman. Wrightson requested documents reflecting the repair work to the Lincoln. None was provided. Donovan told

Wrightson that the nose and front passenger door were replaced on the Lincoln with parts of like kind and quality. After inspecting the Lincoln, Wrightson concluded that the nose and front passenger door of the Lincoln had not been replaced. Wrightson returned to L&L on September 21, 1996, and asked to see the damaged Lincoln parts or receipts for any purchased parts. Neither was produced. Instead, Donovan provided Wrightson with L&L repair orders listing the parts and their prices. Wrightson opined that in September, 1996, the value of the Lincoln, newly painted, was between $3,500 and $4,000.

2. *Discussion.* Lentz argues that no authority permits a party in a civil action to benefit from an adverse inference drawn from the exercise by a nonparty witness of the privilege against self-incrimination, where the witness is not within the control of the party against whom the inference is sought. He argues that such an inference may only be drawn against a party who himself invokes the privilege, or whose employee invokes the privilege.

Generally, "all relevant evidence is admissible unless within an exclusionary rule. Evidence is relevant if it renders the desired inference more probable than it would be without the evidence." *Poirier* v. *Plymouth*, 374 Mass. 206, 210 (1978). We have long recognized that, in civil cases, an adverse inference may be drawn against a party who invokes the Fifth Amendment privilege against self-incrimination. See *Kaye* v. *Newhall*, 356 Mass. 300, 305-306 (1969); *Phillips* v. *Chase*, 201 Mass. 444, 450 (1909) ("[I]f evidence is material and competent except for a personal privilege of one of the parties to have it excluded under the law, his claim of the privilege may be referred to in argument and considered by the jury, as indicating his opinion that the evidence, if received, would be prejudicial to him"). See also *Baxter* v. *Palmigiano*, 425 U.S. 308, 318 (1976).

In *Labor Relations Comm'n* v. *Fall River Educators' Ass'n*, 382 Mass. 465, 471-472 (1981), we expanded the rule to allow a reasonable adverse inference to be drawn against an organization whose officers invoked the privilege, where the officers had specific knowledge of actions taken on behalf of the organization in connection with the underlying claim. See *Shafnacker* v.

*Raymond James & Assocs.*, 425 Mass. 724, 735-736 (1997) (nonparty employee's assertion of privilege might permit adverse inference against party employer if relevant employment relationship was established and witness asserted privilege regarding material issue).

Federal courts addressing a nonparty employee's invocation of the privilege, while avoiding a bright-line rule, have held that such evidence is admissible if the employee's role in the dispute is material and the invocation may fairly be used against the employer in the circumstances. See, e.g., *RAD Servs., Inc.* v. *Aetna Cas. & Sur. Co.*, 808 F.2d 271, 278 (3d Cir. 1986); *Brink's Inc.* v. *City of N.Y.*, 717 F.2d 700, 710 (2d Cir. 1983); *Data Gen. Corp.* v. *Grumman Sys. Support Corp.*, 825 F. Supp. 340, 352-353 (D. Mass. 1993), aff'd in part, 36 F.3d 1147 (1st Cir. 1994). Contrast *Veranda Beach Club Ltd. Partnership* v. *Western Sur. Co.*, 936 F.2d 1364, 1374 (1st Cir. 1991) (invocation inadmissible where evidence insufficient to indicate invoking witness motivated by anything other than personal reasons). The rationale for admitting a nonparty employee's invocation of the privilege against self-incrimination as to a matter within the scope of employment is that it fairly may be characterized as a vicarious admission of the employer. The evidence may be admitted through former as well as current employees. See *Brink's Inc.* v. *City of N.Y.*, *supra*, citing Heidt, The Conjurer's Circle — The Fifth Amendment Privilege in Civil Cases, 91 Yale L.J. 1062, 1119-1120 (1982).

The principle has been expanded further by some courts to allow adverse inferences to be drawn against a party in cases where the invoking witness was neither an employee, former employee, or officer of the party opposing the evidence. See *LiButti* v. *United States*, 107 F.3d 110, 123-124 (2d Cir. 1997) (father's invocation admissible to prove daughter's business was alter ego for his assets); *Federal Deposit Ins. Corp.* v. *Fidelity & Deposit Co.*, 45 F.3d 969, 978 (5th Cir. 1995) (fraudulent loan recipient's invocation of privilege admissible in action against fidelity bond insurer of bank for fraudulent loans made by bank's lending officer). See also *Rosebud Sioux Tribe* v. *A & P Steel, Inc.*, 733 F.2d 509, 520-521 (8th Cir.), cert. denied, 469 U.S. 1072 (1984) (in suit by tribe against contractor

on irrigation project, tribe could introduce invocation of privilege by chairperson of tribal corporation responsible for administration of tribal land who conspired with others to defraud tribe). Although argued, we did not have to decide the issue in *Shafnacker* v. *Raymond James & Assocs., supra,* where the nonparty invoking witness was an independent agent of the defendant, because "no reasonable inference could be drawn between [the witness's] invocation of [his] privilege and the issues disputed in [the] appeal." *Id.* at 736. However, we did not foreclose the use of such evidence in an appropriate case.

In *LiButti* v. *United States, supra,* the court reviewed cases admitting a nonparty, nonemployee's invocation of the privilege substantively, noting the absence of any definitive rule. It delineated four nonexclusive factors to be considered in determining the admission of such evidence, including (1) the nature of the relevant relationship, i.e., whether the relationship is such that the witness would be inclined to invoke the privilege on behalf of the party; (2) the degree of control of the party over the witness asserting the privilege, i.e., whether the party's control over the witness regarding the facts and subject matter of the litigation warrant treating the witness's invocation as a vicarious admission; (3) whether the party and the witness have compatible interests in the witness's assertion of the privilege; and (4) the witness's role in the litigation. *Id.* at 123-124. We think the analysis of the *LiButti* court strikes an appropriate balance between the right and the need to present relevant evidence, on the one hand, and the need to provide a safeguard against the inherent difficulty in responding to such powerful evidence, on the other hand. Ultimately, the test is whether any adverse inference sought is reasonable, reliable, relevant to the dispute, and *fairly* advanced against a party. See *id.* at 124. A judge's decision to admit such evidence will be reviewed for an abuse of discretion. We turn to the specifics of this appeal.

Metropolitan introduced sufficient evidence to establish a joint venture between Lentz, Cook, and Donovan. There was evidence that the Lincoln had not been damaged, or, if it had, the extent of that damage was far less than represented by Lentz and appraised by Cook. There also was evidence that the repairs Donovan had reported to Wrightson had not been made. There

was evidence that Lentz and Donovan had attended high school together and were friends, but Lentz denied that they worked together at L&L Collisions. Metropolitan produced evidence that they did in fact work together at L&L, including evidence that Lentz listed L&L as his employer for the past twelve years in his application for a mortgage loan in November, 1996. Metropolitan likewise demonstrated a relationship between Lentz and Cook. Within seventeen months, Cook appraised three of Lentz's claims and paid $21,931.86, all in connection with unwitnessed accidents involving unidentified third parties. There was evidence that Lentz had purchased the Lincoln for $5,500 and that it was worth between $3,500 and $4,000 in September, 1996. Cook nonetheless appraised the damage to the Lincoln at more than twice the value of the car. When Cook and Donovan were asked to produce documentation reflecting their involvement in Lentz's claim for damages to the Lincoln, neither was able to do so. The jury could properly infer that Cook and Donovan collaborated with Lentz to perfect a false claim for property damage.

In criminal cases, each member of a joint venture is deemed to be the agent of the other when acting in furtherance of the common objective. See *Commonwealth* v. *Flynn*, 362 Mass. 455, 477 (1972). There is no reason why the same principle should not apply in civil cases. The question of control was secondary in the circumstances of this case because the relationship between Lentz, Donovan, and Cook was more akin to a partnership than an employment relationship. Accordingly, a jury could reasonably infer that Cook's and Donovan's invocations of the privilege in the circumstances were made on Lentz's behalf, rather than mere personal invocations of their right not to testify.

By its nature, a criminal joint venture implies a pact to remain silent regarding the enterprise, even after the fact. It is both logical and obvious that Cook and Donovan would invoke their privilege to avoid testifying to facts as incriminating to Lentz as to themselves. As such, Lentz, Donovan, and Cook had compatible interests in concealing the joint venture.

Finally, the role of Donovan and Cook in the litigation was substantial. Each played a key role in the underlying transac-

tion, and each presumably had specific personal knowledge and expertise concerning the amount of any damage and the cost of any repairs to Lentz's vehicle. Donovan and Cook asserted the privilege when asked questions that went directly to their involvement in the processing of Lentz's claim, which was part of Lentz's proof in his case against Metropolitan. It also went directly to Metropolitan's fraud defense. If Metropolitan had not called them to testify, the jury reasonably could have inferred that their testimony would have been merely cumulative of Lentz's testimony, or that it would have been harmful to Metropolitan. The inferences that reasonably could be drawn from Donovan's and Cook's invocation of the privilege are especially reliable and compelling because they invoked the privilege with respect to actions they took independent of each other but in conjunction with Lentz. The inference that Donovan and Cook invoked the Fifth Amendment privilege to avoid inculpating themselves in a criminal joint venture with Lentz to defraud Metropolitan was reasonable, reliable, relevant, and fair in the circumstances. The evidence was properly admitted, and Metropolitan made fair comment on it in closing argument. See *Kaye* v. *Newhall*, 365 Mass. 300, 305 (1969).

Although such evidence has potential for abuse, on proper objection, a judge has considerable discretion to limit the questions posed to a witness who intends to invoke the privilege against self-incrimination. See *id*. Here, the judge properly exercised his discretion by limiting to three the number of questions posed. Any danger that the jury were inclined to find from the mere posing of leading questions, was adequately addressed by the judge's instructions.[2] In any event, the judge retains the

___

[2]Lentz argues further that "[i]t was especially unfair and misleading for the jury to hear Donovan assert his Fifth Amendment claim because he had previously provided testimony at a deposition [in a related case] and had answered every question put to him" by Metropolitan. Metropolitan was under no obligation to use that deposition in place of Donovan's invocation of the privilege. Moreover, as counsel recognized at trial, because Donovan asserted his privilege against self-incrimination, he was unavailable. See *Commonwealth* v. *Charles*, 428 Mass. 672, 678-679 (1999). As such, his deposition testimony was available for use by Lentz as prior recorded testimony. See *Commonwealth* v. *Trigones*, 397 Mass. 633, 638 (1986), quoting *Commonwealth* v. *Meech*, 380 Mass. 490, 494 (1980) (prior recorded testimony is

discretion to exclude such evidence where the potential prejudice outweighs any probative value.

Before Donovan and Cook testified, the judge instructed the jury that they were permitted, but not required, to draw an unfavorable inference against a party based on a witness's invocation of the privilege, and that they should not consider such evidence unless Metropolitan proved that Lentz, Donovan, and Cook were involved in a conspiracy, employment relationship, agency relationship, or a joint venture with respect to the subject matter of the dispute. The judge emphasized that there might be other reasons for a witness to assert the privilege and that the jury must find a direct relationship prior to drawing any adverse inference against Lentz. In his final charge, the judge instructed that (1) a witness's assertion of the privilege in and of itself is not necessarily adverse to any party, especially where the witness is not a party; (2) the jury must find "a past or present agency or employment relationship between the witness and the party, or that the witness was working for or with the party in a matter related to his testimony . . . in such a way that it would be fair to draw an inference unfavorable to the party from the witness's claim of possible self-incrimination"; and (3) the relationship must be proved by evidence other than the witness's claim of privilege. There was no error.

Although the judge correctly anticipated our decision, his instructions were more favorable to Lentz than required by the rule we are announcing. The rule we announce goes to the admissibility of a nonparty witness's invocation of the privilege against self-incrimination as evidence from which a jury may draw an inference against a party, and the determination a judge must make before admitting such evidence. Once the evidence is admitted, the jury need only be instructed that they are permitted, but not required, to draw an inference adverse to a party from a witness's invocation of the privilege against self-incrimination, and that they should not draw such an inference

admissible "where [it] was given by a person, now unavailable, in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered"); P.J. Liacos, Massachusetts Evidence § 8.7.1, at 489 (7th ed. 1999).

if they find that the witness invoked the privilege for reasons unrelated to the case on trial.

*Judgment affirmed.*