SHARLYNN RHODE *v.* ROBERTO MILLA ET AL.
(SC 17860)

Norcott, Katz, Palmer, Vertefeuille and Schaller, Js.

Argued March 17—officially released July 15, 2008

*David S. Migliore*, with whom, on the brief, was *Jeffrey D. Cedarfield* for the appellants (defendants).

*Opinion*

NORCOTT, J. The principal issue in this appeal is whether a nonparty witness' invocation of the privilege against self-incrimination pursuant to the fifth amendment to the United States constitution[1] constitutes

---

[1] The fifth amendment to the United States constitution provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; *nor shall be compelled in any criminal case to be a witness against himself,* nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." (Emphasis added.)

admissible evidence in a civil case. The defendants, Roberto Milla and Rutila Enamorado, appeal[2] from the judgment of the trial court in a personal injury action rendered after a jury trial in favor of the plaintiff, Sharlynn Rhode.[3] On appeal, the defendants claim that the trial court improperly: (1) admitted into evidence bills from Richard Fogel, the plaintiff's chiropractor, pursuant to General Statutes § 52-174 (b);[4] and (2) precluded the defendants from introducing Fogel's invocation of the fifth amendment privilege at trial through either his deposition transcript or live testimony in the presence of the jury. We affirm the judgment of the trial court.

The record reveals the following facts, which the jury reasonably could have found, and procedural history.

---

[2] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The plaintiff did not file a brief in this court or appear at oral argument, and failed to comply with our order pursuant to Practice Book § 67-3 requiring her to file a brief by August 29, 2007. We, therefore, considered this case on the record and the defendants' brief and oral argument only. See *Walsh* v. *Jodoin*, 283 Conn. 187, 191 n.4, 925 A.2d 1086 (2007).

[4] General Statutes § 52-174 (b) provides: "In all actions for the recovery of damages for personal injuries or death, pending on October 1, 1977, or brought thereafter, and in all court proceedings in family relations matters, as defined in section 46b-1, or in the Family Support Magistrate Division, pending on October 1, 1998, or brought thereafter, and in all other civil actions pending on October 1, 2001, or brought thereafter, any party offering in evidence a signed report and bill for treatment of any treating physician, dentist, chiropractor, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist may have the report and bill admitted into evidence as a business entry and it shall be presumed that the signature on the report is that of the treating physician, dentist, chiropractor, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist and that the report and bill were made in the ordinary course of business. The use of any such report or bill in lieu of the testimony of such treating physician, dentist, chiropractor, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist shall not give rise to any adverse inference concerning the testimony or lack of testimony of such treating physician, dentist, chiropractor, natureopath, physical therapist, podiatrist, psychologist, emergency medical technician or optometrist."

At approximately 6 p.m. on April 22, 2002, the plaintiff was driving her Volvo on Interstate 95 in Darien when her vehicle was struck from behind by a Honda operated by Milla and owned by Enamorado, damaging the rear bumper of the plaintiff's car. Subsequent to the accident, the plaintiff began to experience head, neck and back pain, and several days later sought medical attention at the emergency room of Norwalk Hospital as her symptoms worsened. Because she continued to experience pain, the plaintiff then went to Fogel for further medical treatment, including electrical stimulation of her neck and alignments of her spine. She visited Fogel's office for treatment several times per week from April, 2002 through March, 2003, although her neck and back pain and pain radiating down her right arm continued to persist during that time. Subsequent to her treatment by Fogel, the plaintiff also obtained treatment for her lower back and sprained left shoulder from Nicholas Polifroni, an orthopedic surgeon, and from Physical Therapy Associates, as well as at Advanced Health Professionals from Maria Passaro-Henry, a physician, and Richard Mullin, a chiropractor.

The plaintiff brought this action against the defendants for economic and noneconomic damages, alleging that her injuries were the result of Milla's negligent operation of the vehicle, which was imputed to Enamorado pursuant to General Statutes §§ 52-182 and 52-183. Prior to trial in this case, Fogel became the subject of a federal criminal investigation into his patient treatment and billing practices. On the advice of counsel, Fogel asserted his fifth amendment privilege in response to all questions posed to him at his deposition taken by the defendants in this case. The defendants then filed a motion in limine to preclude the admission into evidence of Fogel's bills and records. The defendants argued that the bills and records were inadmissible under § 52-174 (b) because there is no indicia of

their reliability since Fogel's invocation of the privilege meant that he could not be qualified as an expert witness and the defendants did not have the opportunity to cross-examine him.[5] The plaintiff argued in response that Fogel's invocation of the privilege is inadmissible because it would serve no purpose other than to prejudice her, and that the defendants' chiropractic expert, Keith Overland, would have the opportunity to testify about the propriety of Fogel's treatment of the plaintiff as reflected in Fogel's records.[6] The plaintiff emphasized that precluding Fogel's bills would deny her the right to have her damages redressed by the jury, and that the records were admissible as business records. Thereafter, outside the presence of the jury, Fogel was called to the witness stand and invoked the privilege.

The trial court determined that precluding the admission of Fogel's records and bills would be "[un]fair . . . to either side" and that the plaintiff could testify about her treatment by Fogel, with more detail to be provided by the parties' experts. The trial court also precluded the defendants from calling Fogel solely to exercise his fifth amendment privilege in front of the jury, and from admitting into evidence his deposition transcript indicating the same.[7] Finally, the trial court rejected the defendants' request for an adverse inference charge on the basis of Fogel's failure to testify under his claim of privilege.

[5] The defendants had argued before the trial court that precluding them from examining Fogel about his bills would leave them exposed to approximately $4500 in economic damages that might not be "reasonable and necessary."

[6] For her part, the plaintiff moved in limine seeking an order precluding Overland from making "improper comments about [Fogel's] character and credibility" during his testimony, on the ground that such comments are inadmissible hearsay and irrelevant.

[7] After the close of evidence, the trial court denied the defendants' motion to strike the admission into evidence of Fogel's bills and the plaintiff's testimony about her treatment with him. The trial court also denied the defendants' motion for a mistrial on that same ground.

Thereafter, the jury returned a verdict for the plaintiff in the amount of $8224.50 in economic damages and $1775.50 in noneconomic damages, for a total verdict of $10,000. The trial court denied the defendants' motions for remittitur and to set aside the verdict, but reduced the verdict by a collateral source offset of $2986.30. Accordingly, the trial court rendered judgment for the plaintiff in the amount of $7013.70. This appeal followed.

On appeal, the defendants claim that the trial court improperly: (1) admitted evidence of the plaintiff's treatment by Fogel, and specifically the plaintiff's bills from him pursuant to § 52-174 (b); and (2) precluded the defendants from introducing into evidence Fogel's invocation of the fifth amendment privilege. At the outset, we note that the defendants properly preserved these issues before the trial court. We address each claim in turn.

I

We begin with what we view as the principal issue in this appeal, namely, the admissibility of Fogel's invocation of the fifth amendment privilege against self-incrimination, either through live testimony or the introduction of his deposition. The defendants rely on, inter alia, this court's decision in *Olin Corp.* v. *Castells*, 180 Conn. 49, 428 A.2d 319 (1980), wherein this court concluded that, unlike in criminal cases, a party's invocation of the fifth amendment privilege is admissible evidence in a civil proceeding, and contend that this rule should be extended to nonparty witnesses. The defendants argue that the trial court's failure to admit Fogel's invocation of the privilege into evidence denied them their "right to confront adverse witnesses" and prejudiced them because it was highly relevant to his credibility as the plaintiff's treating chiropractor. They contend that the trial court's refusal to admit Fogel's

invocation of the privilege into evidence prejudiced them more than admitting it would have prejudiced the plaintiff. We disagree with the defendants.

Although the defendants posit that this decision by the trial court is an evidentiary ruling, which is subject to review only for abuse of discretion, in our view, the broader question of whether a nonparty witness' invocation of the fifth amendment privilege constitutes admissible evidence is a question of law over which our review is plenary. See *LiButti* v. *United States*, 107 F.3d 110, 124 (2d Cir. 1997); *Federal Deposit Ins. Corp.* v. *Fidelity & Deposit Co. of Maryland*, 45 F.3d 969, 977 (5th Cir. 1995); see also *State* v. *Saucier*, 283 Conn. 207, 219, 926 A.2d 633 (2007) ("we concur with the approach taken by those jurisdictions that have recognized that the function performed by the trial court in issuing its ruling should dictate the scope of review"). To the extent that the trial court must balance issues of prejudice and probative value, however, we view that secondary determination as subject to review only for abuse of the trial court's discretion. See, e.g., *LiButti* v. *United States*, supra, 124; *Hayes* v. *Camel*, 283 Conn. 475, 484–85, 927 A.2d 880 (2007).

Although this is an issue of first impression in Connecticut,[8] it is settled law in other jurisdictions that a nonparty's invocation of the fifth amendment privilege against self-incrimination is admissible evidence so long as it does not unduly prejudice a party to the case. See, e.g., *Federal Deposit Ins. Corp.* v. *Fidelity & Deposit Co. of Maryland*, supra, 45 F.3d 978 ("refus[ing] to adopt a rule that would categorically bar a party from calling, as a witness, a non-party who had no special relationship to the party, for the purpose of having that witness

---

[8] See *Desrosiers* v. *Henne*, 283 Conn. 361, 368 n.6, 926 A.2d 1024 (2007) (identifying but declining to resolve issue because record was inadequate for review).

exercise his [f]ifth [a]mendment right"); *Cerro Gordo Charity* v. *Fireman's Fund American Life Ins. Co.*, 819 F.2d 1471, 1481–82 (8th Cir. 1987) (court has "declined to announce any blanket rule legitimizing all attempts to require a witness to invoke the privilege in the presence of the jury . . . preferring instead to consider these questions on a case-by-case basis" depending on whether "probative value of the evidence substantially outweighed any danger of unfair prejudice" [citation omitted]); *Rad Services, Inc.* v. *Aetna Casualty & Surety Co.*, 808 F.2d 271, 277 (3d Cir. 1986) ("the admission as evidence of a non-party's invocation of the [f]ifth [a]mendment privilege is not per se reversible error"); *Brink's, Inc.* v. *New York*, 717 F.2d 700, 710 (2d Cir. 1983) (nonparty former employees' claims of privilege are admissible, but subject to balancing test under rule 403 of Federal Rules of Evidence to ensure that probative value not " 'substantially outweighed by the danger of unfair prejudice' "). Accord *Olin Corp.* v. *Castells*, supra, 180 Conn. 53 (fifth amendment privilege against self-incrimination does not "forbid the drawing of adverse inferences against parties to civil actions"). Thus, we conclude that, in determining whether a nonparty witness' invocation of the privilege should be admitted into evidence, courts should consider on a case-by-case basis whether the probative value of admitting the privilege exceeds the prejudice to the party against whom it will be used under § 4-3 of the Connecticut Code of Evidence.[9]

---

[9] "[A]lthough relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . [T]he trial court's discretionary determination that the probative value of evidence is . . . outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . [Accordingly] [t]he test for determining whether evidence is unduly prejudicial is not whether it is damaging to the

In making this determination, factors that courts should consider include: (1) "the [n]ature of the [r]elevant [r]elationships . . . [as] invariably . . . the most significant circumstance," "examined . . . from the perspective of a non-party witness' loyalty to the plaintiff or defendant, as the case may be"; (2) "the [d]egree of [c]ontrol of the [p]arty [o]ver the [n]on-[p]arty [w]itness," such as whether the assertion of the privilege may be viewed as a vicarious admission; (3) "the [c]ompatibility of the [i]nterests of the [p]arty and [n]on-[p]arty [w]itness in the [o]utcome of the [l]itigation," namely, whether the "non-party witness is pragmatically a noncaptioned party in interest and whether the assertion of the privilege advances the interests of both the non-party witness and the affected party in the outcome of the litigation"; and (4) "the [r]ole of the [n]on-[p]arty [w]itness in the [l]itigation," such as "[w]hether the non-party witness was a key figure in the litigation and played a controlling role in respect to any of its underlying aspects . . . ." *LiButti* v. *United States*, supra, 107 F.3d 123–24; see also, e.g., *Lentz* v. *Metropolitan Property & Casualty Ins. Co.*, 437 Mass. 23, 28, 768 N.E.2d 538 (2002) ("[T]he analysis of the *LiButti* court strikes an appropriate balance between the right and the need to present relevant evidence, on the one hand, and the need to provide a safeguard against the inherent difficulty in responding to such powerful evidence, on the other hand. Ultimately, the test is whether any adverse inference sought is reasonable, reliable, relevant to the dispute, and fairly

[party against whom the evidence is offered] but whether it will improperly arouse the emotions of the jur[ors]. . . . *State* v. *Skakel*, 276 Conn. 633, 735–36, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006); see also Conn. Code Evid. § 4-3 ([r]elevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence)." (Internal quotation marks omitted.) *Hayes* v. *Camel*, supra, 283 Conn. 484–85.

advanced against a party."); *Levine* v. *March*, Court of Appeals, Docket No. M2006-00297-COA-R3-CV, 2007 Tenn. App. LEXIS 728, *39 (November 27, 2007) ("[t]he prevailing authority today is that the admissibility of a non-party's invocation of the [f]ifth [a]mendment privilege against self-incrimination should be analyzed using the balance test in Fed. R. Evid. 403 and its state counterparts . . . and that questions regarding admissibility should be decided on a case-by-case basis" [citation omitted]), appeal denied, Docket No. M2006-00297-SC-R11-CV, 2008 Tenn. LEXIS 352 (April 28, 2008).

Thus, we agree with the defendants that Fogel's invocation of the fifth amendment privilege was not per se inadmissible. We conclude, however, that a review of the factors enumerated in *LiButti* demonstrates that the trial court did not abuse its discretion in refusing to admit into evidence Fogel's invocation of the privilege. With respect to the first, and "most significant" factor, namely, the "the [n]ature of the [r]elevant [r]elationships"; *LiButti* v. *United States*, supra, 107 F.3d 123; we note that the relationship between Fogel and the plaintiff was nothing more than the plaintiff's having engaged Fogel for the provision of chiropractic services. The second factor, namely, "the [d]egree of [c]ontrol of the [p]arty [o]ver the [n]on-[p]arty [w]itness"; id.; similarly does not favor the defendants because there is no evidence that the plaintiff had any control over Fogel's actions such that "the assertion of the privilege [may] be viewed as . . . a vicarious admission." Id. As to the third factor, there is nothing to suggest that Fogel and the plaintiff had compatible interests in the outcome of the case, or that Fogel's payment was contingent on the outcome of the action, thus rendering him "pragmatically a noncaptioned party in interest . . . ." Id. Finally, considering Fogel's "[r]ole . . . in the [l]itigation," there is no evidence that he "played a controlling role in respect to any of [the] underlying aspects" of the case. Id., 123–24; cf. id.

(District Court may consider father's invocation of fifth amendment in response to questions about business operations and ownership of racehorse in tax levy case in which trial court found daughter was sole owner of horse); *Brink's, Inc.* v. *New York*, supra, 717 F.2d 710 (admitting invocation of privilege by plaintiff's former employees who had participated in parking meter revenue thefts); *Lentz* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 437 Mass. 28–30 (adverse inference may be drawn in insurance fraud case when privilege claimed by friends and former coworkers of insured who were employed at body shop wherein fraudulent claims were made); *Levine* v. *March*, supra, 2007 Tenn. App. LEXIS 728, *41–42 (trial court properly permitted jury to draw adverse inference against other family members, who allegedly had helped with property disposal, from invocation of privilege by husband who had killed his wife). Thus, we conclude that the trial court did not abuse its discretion when it determined that admitting into evidence Fogel's invocation of the privilege would unduly prejudice the plaintiff. In our view, the admission of Fogel's invocation of the privilege in this case, with its relatively minor injuries and low damages, unfairly could have prejudiced a plaintiff who, as a medical layperson, apparently did nothing more nefarious than choose the wrong chiropractor to treat her injuries.[10]

---

[10] At trial, the defendants took an exception to the trial court's refusal to charge the jury that it could draw an adverse inference against the plaintiff on the basis of Fogel's invocation of the fifth amendment privilege. See *Rad Services, Inc.* v. *Aetna Casualty & Surety Co.*, supra, 808 F.2d 277 (" 'During the trial you also heard evidence by past or present employees of the plaintiff refusing to answer certain questions on the grounds that it may tend to incriminate them. A witness has a constitutional right to decline to answer on the grounds that it may tend to incriminate him. You may, but you need not, infer by such refusal that the answers would have been adverse to the plaintiff's interests.' "). The defendants do not, however, raise any instructional claims in this appeal, and because we conclude that the trial court properly refused to admit Fogel's invocation of the privilege into evidence, we need not consider the propriety of any such jury instruction in this case.

## II

The defendants also claim that the trial court improperly admitted "evidence of the plaintiff's treatment by Fogel," specifically the medical bills pursuant to § 52-174 (b), because his invocation of the fifth amendment privilege at his deposition denied the defendants their right to cross-examine him. Whether the trial court improperly admitted evidence under § 52-174 (b) is an evidentiary question, and our review is for abuse of discretion. See *Eisenbach* v. *Downey*, 45 Conn. App. 165, 176, 694 A.2d 1376 (whether medical reports and bills are admissible under § 52-174 [b] when they did not eliminate prior injuries as cause of plaintiff's damages), cert. denied, 241 Conn. 926, 696 A.2d 1264 (1997).

Our analysis necessarily must begin with *Struckman* v. *Burns*, 205 Conn. 542, 534 A.2d 888 (1987), the seminal case with respect to the construction and application of § 52-174 (b). In *Struckman*, this court concluded that § 52-174 (b) applies to "any" treating physician, and that "the reports and bills of a medical practitioner would be admissible even if the medical practitioner had moved outside of the state and . . . was beyond the subpoena power of our courts," and, thus, "cannot be called to testify at a trial." Id., 547–48. More significantly, the court rejected the defendant's argument that this construction of § 52-174 (b) "violates the defendant's right of cross-examination under the United States and Connecticut constitutions." Id., 548–49. Although the court noted that the confrontation clauses of the federal and state constitutions apply only to criminal cases, and declined to reach the constitutional nature of such a right in civil cases, it relied on *Gordon* v. *Indusco Management Corp.*, 164 Conn. 262, 271, 320 A.2d 811 (1973),[11] for the principle that there is an

[11] In *Gordon* v. *Indusco Management Corp.*, supra, 164 Conn. 271, the witness had, "at the time [his] deposition was taken . . . referred during the direct examination to some paper or document." The witness and his attorney refused, however, to permit the plaintiff's attorney to inspect that

" 'absolute' " common-law right to cross-examination in a civil case. *Struckman* v. *Burns*, supra, 549. The court concluded, however, that this right had not been violated by the admission of the bills and report of an out-of-state physician because § 52-174 (b) "does not significantly curtail the right of cross-examination because it does not preclude taking the deposition of a nonresident medical practitioner whose report or bill may be offered into evidence at a trial."[12] Id. Indeed, the court further noted that, "[w]hile it is true that the defendant does not have the power by subpoena to force an out-of-state witness to travel to Connecticut for trial, General Statutes § 52-148c allows a party to apply to the court for a commission to take the deposition of an out-of-state witness. Once the commission is granted by the court in this state, a subpoena can be obtained in the proposed deponent's state to force the deponent to attend a deposition in his state."[13] Id., 552.

document. Id. "When the deposition was offered at the time of trial the plaintiff objected to its admission and the court excluded the deposition on the ground that the plaintiff's counsel had been deprived of an opportunity for full cross-examination." Id. This court concluded that, "[s]ince the witness obviously used a document to refresh his recollection, the plaintiff's counsel had a right to examine it. . . . The court in its discretion could certainly refuse to admit the deposition on the ground that the plaintiff was deprived of complete cross-examination. . . . There has been no showing that the court abused its discretion in ruling that the refusal of the witness and the defense counsel to permit inspection of the document unduly restricted the plaintiff's right to a full cross-examination." (Citations omitted.) Id., 271–72.

[12] The court stated that "the legislature undoubtedly considered the prevailing evidentiary treatment of hospital records"; *Struckman* v. *Burns*, supra, 205 Conn. 549; and statutes that "allow hospital records containing expert opinions concerning diagnosis to be admitted without the in-court testimony of the treating medical practitioner." Id., 550.

[13] The court further rejected the defendant's concerns "with the costs associated with deposing an out-of-state witness. If the plaintiff had chosen to depose the nonresident medical practitioners rather than introduce their reports at trial, the defendant could hardly have objected on the ground that he would be obliged to incur additional expenses for travel in order to exercise his right of cross-examination." *Struckman* v. *Burns*, supra, 205 Conn. 552.

Guided by *Struckman*, we conclude that the defendants did not have an adequate opportunity to cross-examine Fogel in a meaningful manner about his bills either at his deposition or at trial because of his invocation of the fifth amendment privilege. We also acknowledge that the trial court's otherwise proper ruling refusing to admit Fogel's invocation of the privilege into evidence; see part I of this opinion; further deprived the defendants of an opportunity to discredit him at trial. Thus, we conclude that the trial court improperly admitted the bills into evidence pursuant to § 52-174 (b).

"This conclusion does not, however, end our inquiry, because [e]ven when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result. . . . Moreover, an evidentiary impropriety in a civil case is harmless only if we have a fair assurance that it did not affect the jury's verdict." (Citations omitted; internal quotation marks omitted.) *Hayes* v. *Camel*, supra, 283 Conn. 488–89.

Moreover, "[a] determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial. . . . Thus, our analysis includes a review of: (1) the relationship of the improper evidence to the central issues in the case, particularly as highlighted by the parties' summations; (2) whether the trial court took any measures, such as corrective instructions, that might mitigate the effect of the evidentiary impropriety; and (3) whether the improperly admitted evidence is merely cumulative of other validly admitted testimony. . . . The overriding question is whether the trial court's

improper ruling affected the jury's perception of the remaining evidence." (Citations omitted; internal quotation marks omitted.) Id., 489–90.

Having reviewed the entire record in this case, we have a " 'fair assurance' " that this evidentiary impropriety likely did not affect the jury's verdict. Id., 489. The bills were admitted when the plaintiff testified about her injuries, and "we have upheld the admission of doctors' bills, even though the doctor has not appeared and testified, where the plaintiffs testify that the bills have been incurred as a result of the injuries received." *Bruneau* v. *Quick*, 187 Conn. 617, 622, 447 A.2d 742 (1982); id. (rejecting defendant's claim that "court erred in admitting certain bills into evidence because there was no competent medical testimony that they were proximately related to any negligence of the defendant"). Moreover, inasmuch as this case is not a medical malpractice action or physician licensing proceeding, the medical validity of Fogel's treatment methods is *not* a central issue herein. To the limited extent that Fogel's treatment methods were, however, relevant to the plaintiff's damages, they and the associated charges to the plaintiff did not go unchallenged at trial. Overland, a Norwalk chiropractor and vice president of the American Chiropractic Association, testified that Fogel had engaged in unnecessary and excessive chiropractic treatments that were unwarranted by the plaintiff's condition.[14] Finally, Fogel's bills were not the only source of

---

[14] Specifically, Overland testified, on the basis of his twenty-five years of experience in practicing chiropractic medicine, that Fogel had "provided approximately thirty-six chiropractic treatments from April 30th through October 10, 2002, and it was my opinion that at some point earlier than those full scope of visits, [the plaintiff] had reached maximum improvement under his particular type of care. And it was my opinion that should have been approximately three months and maybe twenty-four visits or so." Overland further noted the plaintiff's lack of progress and testified that Fogel should have pursued an alternate course of treatment for her, based on Overland's review of the records, which were "below standard" in his opinion. Overland noted that there were "similar findings on every single of the thirty-six visits when it comes to the treatment and the assessment

support for the plaintiff's claims of injury and disability. Numerous hospital and radiology bills were admitted into evidence, as was the May, 2005 report by Passaro-Henry and Mullin that explained the treatment provided to the plaintiff and linked her chronic back and neck pain to the accident. Accordingly, although the defendants were deprived of their right to cross-examine Fogel about his bills, we conclude that the deprivation was harmless and, therefore, does not require a new trial.

The judgment is affirmed.

In this opinion the other justices concurred.

and the objective findings. And so, basically it seemed to me that at a certain point, those records did not justify continued treatments, so that's what I really pulled out of this—the review of the notes is that there was really no justification for ongoing treatment beyond a certain point." He testified that if treatment was not successful after three or four weeks, he would look for alternative methods of treatment, and that the fact that identical treatments were used for such a long time without change in condition indicates that Fogel had departed from the standard of care.