******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KATHRYNNE S. *v.* STANLEY SWETZ*
(AC 41143)

Alvord, Bright and Bear, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court granting the application for relief from abuse filed by the plaintiff, pursuant to statute (§ 46b-15), and issuing a domestic violence restraining order against him. At the time she filed her application, the plaintiff resided with her life partner and his son, the defendant. In her affidavit, the plaintiff averred, inter alia, that the defendant verbally attacked her, followed her throughout the house, opened windows on cold days, used derogatory language against her, threatened to sabotage her car and barged into her room to take photographs of her in her nightwear, and at the hearing on her application she described his conduct as constant intimidation, threatening and stalking. Following the hearing, the trial court granted the application for a restraining order, and the defendant appealed to this court. *Held:*

1. There was sufficient evidence to support the trial court's finding that the defendant presented a continuous threat of present physical harm or injury to the plaintiff: that court found that a restraining order was warranted on the basis of the plaintiff's affidavit, her testimony, and the testimony of a social worker, as the plaintiff testified that she was intimidated and bullied, and that her physical safety was in jeopardy with the defendant in the home, there were at least two prior incidents in which the defendant made physical contact with the plaintiff, and the defendant admitted he was charged with disorderly conduct after one of those incidents; moreover, the court, as the sole arbiter of the credibility of the witnesses, was free to credit the plaintiff's testimony that while at the same residence, the defendant constantly screamed into her left ear, told her that she did not belong in certain parts of the house, ranted at her and threatened her with physical harm, which caused her to tremble, and that testimony was corroborated by the testimony of the social worker.

2. The defendant could not prevail on his claim that the trial court was improperly influenced by his invocation of his right against self-incrimination pursuant to the fifth amendment of the United States constitution, which occurred after he objected to the admission of a certain audio recording and the court informed him that the recording had been shared with the Manchester Police Department, that there might be a criminal investigation, that the restraining order hearing was being recorded and that he had a fifth amendment right against self-incrimination, which the defendant subsequently invoked; the court, which advised the defendant that he had a right not to incriminate himself, did not specifically state that it was drawing an adverse inference against the defendant because he objected to the admission of the recording into evidence, and even if the trial court did draw an erroneous adverse inference from the defendant's objection to the admission of evidence, it was harmless error because there was other sufficient evidence of the defendant's conduct.

3. The trial court properly applied the preponderance of the evidence standard of proof to weigh the evidence at the hearing for the domestic violence restraining order; because the plaintiff applied for a civil restraining order under § 46b-15, which is silent as to the applicable standard of proof, the preponderance of the evidence standard applied, and it is the common and correct practice for trial courts to employ that standard of proof in cases involving domestic violence restraining orders.

Argued May 20—officially released August 20, 2019

*Procedural History*

Application for relief from abuse, brought to the Superior Court in the judicial district of Hartford, where the court, *Bozzuto, J.*, granted the application and

issued a restraining order, from which the defendant appealed to this court. *Affirmed.*

*Stanley Swetz*, self-represented, the appellant (defendant).

*Opinion*

PER CURIAM. The self-represented defendant, Stanley Swetz, appeals from the judgment of the trial court granting the application of the self-represented plaintiff, Kathrynne S., for relief from abuse and issuing a domestic violence restraining order pursuant to General Statutes § 46b-15.[1] On appeal, the defendant claims that the court improperly (1) determined that there was evidence of imminent physical harm or threat, (2) considered his invocation of his right against self-incrimination pursuant to the fifth amendment of the United States constitution as evidence (fifth amendment right), and (3) applied an incorrect standard of proof in granting the application.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On November 17, 2017, the plaintiff filed an application for relief from abuse against the defendant pursuant to § 46b-15. At the time of her application, the plaintiff resided with her life partner and his son, the defendant.[3] In her application, the plaintiff averred under oath that the defendant screamed in her left ear, verbally attacked her so forcefully that she would be covered in his spit, followed her throughout the house, opened windows on cold days, used derogatory language directed at her, threatened to sabotage her car, and barged into her room to take photographs of her in her nightwear, and that the defendant had been arrested for assaulting her in 2015.

At the hearing on the plaintiff's application, on November 30, 2017, the plaintiff described the defendant's conduct as "constant intimidation and threatening and stalking . . . ." The plaintiff also testified that the defendant struck her on two occasions, once in 2010 and again in 2015. In support of her claims, the plaintiff offered into evidence, to which the defendant objected,[4] a flash drive containing an audio recording of the defendant allegedly engaging in an eighteen minute "verbal rant" against the plaintiff. The plaintiff further testified that she had gone to the Manchester police with the recording. The court then asked the defendant if he objected to its hearing of the recording given to the police and advised the defendant of his fifth amendment right. After the court's advisement, the defendant invoked his fifth amendment right with respect to the contents of the recording.[5] The court then stated that it inferred "that there is stuff on that tape he doesn't want this court to hear." The tape was not admitted into evidence.

The plaintiff also presented the testimony of Brooke Clemons, a social worker for Manchester Protective Services for the Elderly. Clemons testified that the plaintiff had provided a video from her phone about the emotional abuse she received and that the plaintiff

had told her that the defendant stole food and repeatedly stood right behind her and yelled in her ear. Clemons further testified that because of the plaintiff's disclosure, she opened two protective service cases: one on the plaintiff and one on her life partner. She also testified that she met with the plaintiff's life partner and he "supported everything that [the plaintiff] was telling [her] that was happening in the home" and that "he would like to see his son leave."[6] The defendant did not object to any of Clemons' testimony.

In response, the defendant argued at the hearing that the plaintiff had not made any accusations of imminent physical harm in her application for the restraining order or in her presentation to the court. He also argued that the plaintiff had presented "no concrete day, time" associated with her claims.

At the conclusion of the hearing, the court orally rendered its decision granting the plaintiff's application for a restraining order. The court stated: "I do believe [the plaintiff], that she feels that her safety is at risk with [the defendant] being present in the home. I do believe that she feels intimidated and bullied and that her physical safety is in jeopardy. So, I think it's entirely appropriate to grant the relief requested." The court issued a full no-contact order for one year. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we note that although the restraining order expired on November 30, 2018, the defendant's appeal is not moot. In *Putman* v. *Kennedy*, 279 Conn. 162, 164–65, 900 A.2d 1256 (2006), our Supreme Court concluded that "the expiration of a domestic violence restraining order does not render an appeal from that order moot because it is reasonably possible that there will be significant collateral consequences for the person subject to the order." Accordingly, we proceed to the merits of the defendant's appeal.

I

On appeal the defendant first claims that the court erroneously determined that he had threatened and bullied the plaintiff and that he had caused her to fear for her personal safety. More specifically, he claims that "[t]he judge made her decision based on feelings and on no actual facts brought into evidence."

We first set forth the standard of review and applicable legal principles that guide our analysis. "[T]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the

correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Footnote omitted; internal quotation marks omitted.) *Princess Q. H.* v. *Robert H.*, 150 Conn. App. 105, 111–12, 89 A.3d 896 (2014).

Section 46b-15 (a), which governs this case, authorizes the court to issue a restraining order upon a finding that a "household member . . . has been subjected to a continuous threat of present physical pain or physical injury, stalking or a pattern of threatening . . . ." Because the court granted the plaintiff's application on the basis of its finding that there existed a continuous threat of present physical pain or injury, we proceed under that part of § 46b-15, and not under the stalking or pattern of threatening portion of the statute. With respect to the defendant's claim as considered by the court, "[t]he plain language of § 46b-15 clearly requires a continuous threat of present physical pain or physical injury before a court can grant a domestic violence restraining order. . . . [D]omestic violence restraining orders will not issue in the absence of the showing of a threat of violence, specifically a continuous threat of present physical pain or physical injury to the applicant." (Citation omitted; internal quotation marks omitted.) *Jordan M.* v. *Darric M.*, 168 Conn. App. 314, 319, 146 A.3d 1041, cert. denied, 324 Conn. 902, 151 A.3d 1287 (2016). As this court held in *Putman*, after remand from our Supreme Court, "*one* incident [of physical injury], combined with a finding that a respondent presently poses a continuous threat, is sufficient to satisfy § 46b-15." (Emphasis in original.) *Rosemarie B.-F.* v. *Curtis P.*, 133 Conn. App. 472, 477, 38 A.3d 138 (2012); see *Putman* v. *Kennedy*, 104 Conn. App. 26, 32–34, 932 A.2d 434 (2007), cert. denied, 285 Conn. 909, 940 A.2d 809 (2008).

In *Putman*, as in the present case, the defendant argued that the trial court abused its discretion because there was no factual basis to support its finding that the defendant presented a continuous threat of physical pain or injury to support the issuance of a restraining order under § 46b-15. *Putman* v. *Kennedy*, supra, 104 Conn. App. 33–34. Specifically, the defendant in *Putnam* argued that there was only an isolated altercation with his son and that there was no history of violence. Id., 33–34. This court held that "neither a pattern of abuse nor the son's subjective fear of the defendant is a requirement for the finding of a continuous threat. . . . It would defy the prophylactic purpose of the statute to impose an absolute bar on relief until the person for whom protection was sought has suffered multiple

physical abuses." (Citations omitted.) Id., 34. The trial court had found, and this court affirmed, that the altercation between the father and the son, along with the father's refusal to accept responsibility, was sufficient to find that the son was subject to a continuous threat of present physical pain or injury, despite the fact that the son did not state that he was afraid of his father. Id., 34–35. To have held otherwise would have restricted "the necessarily broad discretion trial courts must retain in dealing with such sensitive and fact specific matters." Id., 35.

In the present case, the court found that a restraining order was warranted on the basis of the plaintiff's affidavit, her testimony, and the testimony of the social worker. The court believed the plaintiff's testimony that she was intimidated and bullied, and that her physical safety was in jeopardy with the defendant present in the home. "In pursuit of its fact-finding function, [i]t is within the province of the trial court . . . to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *Margarita O.* v. *Fernando I.*, 189 Conn. App. 448, 461–62, 207 A.3d 548, cert. denied, 331 Conn. 930, 207 A.3d 1051 (2019).

In the case at bar, the court also had before it evidence of at least two prior incidents when the defendant made physical contact with the plaintiff. The plaintiff testified about an incident in 2010 in which the defendant hit her. Later in the hearing, the plaintiff testified about another incident in 2015 in which the defendant struck her, which resulted in the defendant's arrest, and a subsequent court order for him to complete anger management classes. The defendant admitted to being charged, after the 2015 incident, with disorderly conduct.

Additionally, the plaintiff described in her testimony the conduct of the defendant while they lived at the same residence, including that the defendant constantly screamed into her left ear, told the plaintiff that she did not belong in certain parts of the house, ranted at her for long periods of time, and threatened her with physical harm. According to the plaintiff, the defendant's actions caused her to tremble. The court also heard the testimony of Clemons, which corroborated the plaintiff's claims.

The court, as the sole arbiter of credibility, was free

to credit the plaintiff's testimony. See *Jayne S.* v. *Kyle S.*, 116 Conn. App. 690, 692, 978 A.2d 94 (2009). Contrary to the defendant's claim that "[t]he judge made her decision based on feelings and on no actual facts brought into evidence," we conclude that there was sufficient evidence to support the court's finding that the defendant presented a continuous threat of present physical harm or injury to the plaintiff.

## II

The defendant next claims that "[t]he judge was influenced by the defendant's invoking of the fifth amendment and used it as evidence against him."

"The plaintiff's claim involves a question of law, over which our review is plenary. See *Rhode* v. *Milla*, 287 Conn. 731, 737, 949 A.2d 1227 (2008) (whether invocation of fifth amendment privilege constitutes admissible evidence is question of law over which our review is plenary)." *Greenan* v. *Greenan*, 150 Conn. App. 289, 298 n.7, 91 A.3d 909, cert. denied, 314 Conn. 902, 99 A.3d 1167 (2014).

First, we note that the defendant's claim rests upon a seeming misunderstanding of the law involving the fifth amendment right. Although a criminal defendant's invocation of the fifth amendment right prevents a court from drawing an adverse inference, because of the defendant's refusal to testify, of the existence of a fact, or facts, relating to the defendant's guilt, such a prohibition does not apply to civil matters, unless there exists an express statutory provision to the contrary. See *In re Samantha C.*, 268 Conn. 614, 635, 847 A.2d 883 (2004) ("The privilege does not . . . forbid the drawing of adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. The prevailing rule is that the fifth amendment does not preclude the inference where the privilege is claimed by a party to a civil cause." [Internal quotation marks omitted.]). This reflects "the long-standing principle that the trier of fact is entitled to draw all fair and reasonable inferences from the facts and circumstances [that] it finds established by the evidence, which consist both of what was said, and what naturally would have been." (Internal quotation marks omitted.) Id., 636.

As noted previously, the plaintiff sought to introduce an audio recording that she had made of the defendant purportedly engaged in a "verbal rant" against her for eighteen minutes. The defendant objected to the court hearing the recording, claiming that he did not know he was being recorded at the time and that he objected to having his voice recorded "surreptitiously," but he, at that point, did not invoke his fifth amendment right. In response, the court informed the defendant that he should keep in mind that the plaintiff had testified that she had shared the recording with the Manchester

Police Department, that they directed her to the trial court, and that there might be a criminal investigation by the Manchester Police Department. The court further informed the defendant that the restraining order hearing was being recorded and that a prosecutor could ask the court reporter for a transcript or recording of his testimony, and informed him of his fifth amendment right against self-incrimination. The defendant then invoked his fifth amendment right. The court later stated: "I advised him of his fifth amendment right not to incriminate himself, and I infer from his objection that there is stuff on that tape he doesn't want this court to hear." The court did not specifically state that it was drawing any adverse inference against the defendant because he objected to the admission of the recording into evidence.[7] Even if we were to conclude that the court did draw an erroneous adverse inference from the defendant's objection to the admission of evidence, it was harmless error because there also was other sufficient evidence of the defendant's conduct, including the plaintiff's testimony and the testimony of Clemons.

### III

Finally, the defendant claims that the court applied an incorrect standard of proof in granting the restraining order. Specifically, he argues that the court improperly used the standard of "just tipping the scales" in determining that the plaintiff was entitled to a restraining order pursuant to § 46b-15.

"The issue of whether the court held the parties to the proper standard of proof is a question of law. When issues in [an] appeal concern questions of law, this court reviews such claims de novo." (Internal quotation marks omitted.) *Satti* v. *Kozek*, 58 Conn. App. 768, 771, 755 A.2d 333, cert. denied, 254 Conn. 928, 761 A.2d 755 (2000).

In a civil dispute, the usual standard of proof employed by the trier of fact is the preponderance of the evidence. *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 819, 955 A.2d 15 (2008) ("in this state, proof by preponderance of the evidence is the ordinary civil standard of proof" [internal quotation marks omitted]); see *State* v. *Davis*, 229 Conn. 285, 295–96, 641 A.2d 370 (1994) ("our determination is guided by the general rule that when a civil statute is silent as to the applicable standard of proof, the preponderance of the evidence standard governs factual determinations required by that statute"). In the present case, the plaintiff applied for a civil restraining order under § 46b-15. Because § 46b-15 is silent as to the applicable standard of proof, the preponderance of the evidence standard applies. Indeed, it is the common and correct practice for our trial courts to employ the preponderance of the evidence standard in cases involving domestic violence restraining orders. See, e.g., *Fati-*

*canti* v. *Faticanti*, Superior Court, judicial district of Tolland, Docket No. FA-18-4024765-S (May 11, 2018) (in order to be entitled to domestic violence restraining order under § 46b-15 [a], applicant must establish continuous threat of present physical pain or injury by preponderance of evidence); *State* v. *Hollander*, Superior Court, judicial district of New London, Docket No. CR-12-0119114-S (April 6, 2015) (60 Conn. L. Rptr. 85) ("[a] civil restraining order is premised on a finding of what is in the best interests of the victim given threatening or assaultive behavior of the defendant as established by a fair preponderance of the evidence").

At the conclusion of the hearing, the court informed the parties that, because it was a civil proceeding, the plaintiff was required to "tip the scales"—a colloquialism often used by our courts to refer to the preponderance of the evidence standard of proof.[8]  We conclude as a matter of law that the court properly used the preponderance of the evidence standard to weigh the evidence in the hearing for a domestic violence restraining order.

The judgment is affirmed.

[*] In accordance with our policy of protecting the privacy interests of an applicant for a restraining order, we decline to identify the applicant or others through whom the applicant's identity may be ascertained.

[1] General Statutes § 46b-15 (a) provides in relevant part: "Any family or household member . . . who has been subjected to a continuous threat of present physical pain or physical injury, stalking or a pattern of threatening . . . by another family or household member may make an application to the Superior Court for relief under this section. . . ."

[2] The plaintiff failed to file a brief with this court. We, therefore, have considered the appeal solely on the basis of the defendant's brief, oral argument, and the record. See *Schettino* v. *Labarba*, 82 Conn. App. 445, 446 n.2, 844 A.2d 923 (2004).

[3] The plaintiff's life partner, the defendant's father, passed away on December 14, 2017.

[4] The basis of the defendant's objection was: "Well, I reject being—having anything of my voice recorded surreptitiously."

[5] Although the defendant invoked his fifth amendment right with respect to the contents of the recording, he continued to testify about matters other than the recording.

[6] According to both parties, at the time of the hearing, the defendant was appealing an eviction order by the housing court.

[7] Our Supreme Court has determined that "an adverse inference cannot supply proof of a material fact; it merely allows the fact finder to weigh facts already in evidence." *In re Samantha C.*, supra, 268 Conn. 665.

[8] See, e.g., *In re Samantha C.*, supra, 268 Conn. 666 ("[a]lthough it is true that the respondents faced a difficult choice in the present case, namely, choosing whether to expose themselves to cross-examination or risking that an adverse inference might tip the scales in the petitioner's favor, that choice was preferable to no choice at all").